MATTHEW KERRY (P81793)
214 S Main St. Suite 200
Ann Arbor, MI 48104
Telephone: (734) 263-1193
Facsimile: (734) 661-0765
Email: matt@kerrylawpllc.com

DAVID D. LIN (*pro hac vice* forthcoming)
JUSTIN MERCER (*pro hac vice* forthcoming)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
Email: david@iLawco.com
Email: justin@iLawco.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TWIN FLAMES UNIVERSE.COM INC., a Michigan corporation; MIND ALIGNMENT PROCESS INC., a Michigan corporation; JEFFREY AYAN, an individual resident of Michigan; and SHALEIA AYAN, an individual resident of Michigan, | Case No.: 20-11659 |
| Plaintiffs, | **COMPLAINT FOR FALSE PROMOTION; UNFAIR COMPETITION; DEFAMATION; CONVERSION and TRESPASS** |
| vs. | |
| LISA ELLE GIACOMINI a/k/a ELLE GAIA d/b/a TWIN FLAMES GAIA a/k/a ASCENDED WELLNESS, an individual resident of Colorado; ARCELIA FRANCIS HUGUES f/k/a JOHN FRANCIS HUGUES d/b/a TWIN FLAME TRANSCENDENCE, an individual resident of New York; ADAM KATSALE a/k/a ADAM NAMASTE d/b/a ASCENSION EXPRESS, an individual resident of New York; and ELIZABETH "SHAKTI" KALOCZI d/b/a RISE SHAKTI, an individual resident of the United Kingdom, | **DEMAND FOR JURY TRIAL** |

Defendants.

Plaintiffs TWIN FLAMES UNIVERSE.COM INC. ("TFU" or "Twin Flames Universe");

MIND ALIGNMENT PROCESS INC. ("MAP");; JEFFREY AYAN, ("Mr. Ayan"); and

SHALEIA AYAN, ("Ms. Ayan" and collectively with TFU, MAP, and Mr. Ayan, "Plaintiffs"),

for their complaint for damages and injunctive relief against LISA ELLE GIACOMINI a/k/a

ELLE GAIA d/b/a TWIN FLAMES GAIA a/k/a ASCENDED WELLNESS, ("Giacomini" or

"Ascended Wellness"); ARCELIA FRANCIS HUGUES f/k/a JOHN FRANCIS HUGUES d/b/a

TWIN FLAME TRANSCENDENCE ("Hugues" or "TF Transcendence"); ADAM KATSALE

a/k/a ADAM NAMASTE d/b/a ASCENSION EXPRESS ("Katsale" or "Ascension Express");

ELIZABETH "SHAKTI" KALOCZI d/b/a RISE SHAKTI ("Kaloczi" or "Rise Shakti," and

collectively with Giacomini, Hugues, and Katsale, "Defendants") allege as follows:

## NATURE OF CASE

1.      Twin Flames Universe, along with MAP, are a set of organizations devoted to spiritual wellness, relationship guidance and self-love through harmonious connection to one's Twin Flame, i.e. your true love or divine counterpart, and which also promote alternative healing and personal lifestyle wellness programs.  Mr. and Ms. Ayan are Twin Flames, spiritual teachers and the founders of TFU and MAP. Twin Flames Universe promotes its services through online educational programs, in-person workshops and one-on-one consultations.

2.      Plaintiffs have learned of a conspiracy by a few disgruntled former Twin Flames Universe students who are each operators of competing transformational coaching businesses, to smear Plaintiffs' reputations, and create a false, misleading and defamatory image of Plaintiffs' business practices and spirituality. Defendants commenced and orchestrated a massive, systematic pattern of online harassment and disparagement via websites such as Twitter, Reddit,

Facebook, and via their own websites in an effort to usurp Plaintiffs' current customers and dissuade Plaintiffs' prospective customers from doing business with Plaintiff by falsely painting as "abusive," "manipulative," "scammers" and "practi[tioners of] illegal psychotherapy."

3.     First, Defendants openly defamed Plaintiffs in public Reddit posts and Facebook groups dedicated to Twin Flames Universe. Then, Defendants covertly and illegally accessed Plaintiffs' email and/or computers to manipulate Plaintiffs' Twitter account to impersonate Plaintiffs and spew more negativity.

4.     Defendants also created fake, impersonating and/or "troll" Twitter, Instagram and Facebook accounts to attack Plaintiffs and their businesses, hijacking Plaintiffs' own commercial advertising for their services to create negative ads that denigrate Plaintiffs' services—while touting Defendants' own competing businesses.

5.     When their direct-to-consumer, online campaign of negative advertising was initially unsuccessful in promoting their competing business or disparage Plaintiffs, Defendants recently banded together in their self-described "collective effort to expose the scumbags" and to amplify their negativity by lying to a reporter for Vice Media.

6.     As a part of their scheme and conspiracy, Defendants collectively convinced the Vice Media reporter to publish a fantastical and false account of Defendants' "experiences" with Plaintiffs in Michigan—which painted an impressionist caricature of Twin Flames Universe's actual business and was otherwise filled with outright misleading statements and lies.

7.     Thus, this is an action pursuant to the federal Lanham Act for preliminary and permanent injunctive relief and recovery of damages arising from acts of false promotion, unfair competition, tortious interference, defamation/trade libel, and civil conspiracy in connection with, *inter alia*, Defendants' scheme to steal Plaintiffs' business by making certain misleading and defamatory statements concerning their business across the Internet, accessing without

authorization Plaintiffs' emails, computers and passwords to hijack and manipulate Plaintiffs' Twitter account, and contributing to and then falsely disseminating Vice Media news articles which repeated their unsubstantiated and demonstrably false promotions.

8.      Plaintiffs seek injunctive relief, damages, statutory damages, punitive damages and recovery of their costs and reasonable attorneys' fees.

## PARTIES

9.      Twin Flames Universe.Com Inc. is a Michigan corporation with its principal place of business in Sutton Bay, Michigan. At the times relevant to the events in this complaint, TFU maintained a place of business in Farmington Hills, Michigan.

10.      Mind Alignment Process Inc. is a Michigan corporation with its place of business in Sutton Bay, Michigan. At the times relevant to the events in this complaint, MAP maintained a place of business in Farmington Hills, Michigan.

11.      Jeffrey Ayan is an individual resident of Michigan. Mr. Ayan is not a public figure and not a public official.

12.      Shaleia Ayan is an individual resident of Michigan. Ms. Ayan is not a public figure and not a public official.

13.      Upon information and belief, Defendant Giacomini a/k/a Elle Gaia is an individual domiciled in the State of Colorado and does business as TWIN FLAMES GAIA a/k/a ASCENDED WELLNESS.  Defendant Giacomini is the registrant and contact for her businesses' domain names <www.twinflaimesgaia.com> and <ascendedwellness.net>, respectively. Upon information and belief, Giacomini either personally scripted the false postings concerning the Michigan-based Plaintiffs on the various websites and either physically posted them herself or instructed other Defendants and/or her accomplice(s) to do so, under her authority and direction. Upon further information and belief, Giacomini conducts substantial

business in interstate commerce and within the State of Michigan through her businesses Twin

Flames Gaia and Ascended Wellness.

14.     Upon information and belief, Defendant Arcelia Francis Hugues f/k/a John

Francis Hugues is an individual domiciled in the State of New York and does business as TWIN

FLAME TRANSCENDENCE.  Defendant Hugues is the registrant and contact for her

business's domain name <www.twinflametranscendence.com>. Upon information and belief,

Hugues either personally scripted the false postings concerning the Michigan-based Plaintiffs on

the various websites and either physically posted them herself or instructed other Defendants

and/or her accomplice(s) to do so, under her authority and direction. Upon further information

and belief, Hugues conducts substantial business in interstate commerce and within the State of

Michigan through her business Twin Flame Transcendence.

15.     Upon information and belief, Defendant Adam Katsale a/k/a Adam Namaste is an

individual domiciled in the State of New York and does business as ADAM NAMASTE and

ASCENSION EXPRESS.  Defendant Katsale is the registrant and contact for his businesses'

domain name <www.ascensionexpress.com>. Upon information and belief, Katsale either

personally scripted the false postings concerning the Michigan-based Plaintiffs on the various

websites and either physically posted them himself or instructed the other Defendants and/or his

accomplice(s) to do so, under his authority and direction. Upon further information and belief,

Katsale conducts substantial business in interstate commerce and within the State of Michigan

through his business Ascension Express.

16.     Upon information and belief, Defendant Elizabeth "Shakti" Kaloczi is an

individual domiciled in the United Kingdom and does business as RISE SHAKTI.  Defendant

Kaloczi is the registrant and contact for her business's domain name <www.riseshakti.com>.

Upon information and belief, Kaloczi either personally scripted the false postings concerning the

Michigan-based Plaintiffs on the various websites and either physically posted them herself or instructed other Defendants and/or her accomplice(s) to do so, under her authority and direction. Upon further information and belief, Kaloczi conducts substantial business in interstate commerce and within the State of Michigan through her business Rise Shakti.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the laws of the State of Michigan. This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 *et seq.*

18. This Court has personal jurisdiction over Defendants because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Further, Defendants purposely availed themselves of the laws of the State of Michigan by invoking the benefits and protections of this State in an attempt to cause harm in the State of Michigan, and while Defendants knew Plaintiffs resided and/or operated in Michigan—such that the injury derived from their acts would be and were felt in the State of Michigan.

19. Defendants also took steps to ensure that their conduct would cause damage and injury to Plaintiffs in the Eastern District of Michigan, by directing posts and articles about Plaintiffs to persons dealing with Plaintiffs in the Eastern District of Michigan. For example, Defendants conspiratorially-contributed article in Vice Media refers to Defendants as, *inter alia*, former "devoted member[s] of an online spirituality school called Twin Flames Universe, led by two glassy-eyed **Michigan** YouTubers calling themselves Jeff and Shaleia," and claims that Defendants "called **Michigan** police" and communicated with "[t]he local police department **in Farmington Hills, Michigan**," (emphasis added) concerning their false claims regarding Plaintiffs.

20. Further, upon information and belief, Defendants derive substantial revenue from interstate or international commerce in the course of their own acts and conduct.

21. Further and alternatively, to the extent that Defendant Kaloczi is not subject to this Court's personal jurisdiction, the action should proceed against her pursuant to Fed. R. Civ. P. 4(k)(2) insofar as at least one of the claims against her arises under federal law.

22. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

23. Venue in this judicial district is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS RELEVANT TO ALL CLAIMS

### A. Twin Flames Universe and MAP, their Principals Mr. and Ms. Ayan, and their Supporting Commercial Enterprise and Goodwill

24. Twin Flames Universe.com Inc. is a company founded in 2017 by Jeff Ayan and Shaleia Ayan.

25. Jeff Ayan is an author, entrepreneur, businessman, motivational speaker, spiritual teacher and Twin Flame to Shaleia.

26. Shaleia Ayan is likewise an author, entrepreneur, businesswoman, motivational speaker, spiritual teacher and Twin Flame to Jeff.

27. Through devoted service and love, they have built a thriving Twin Flame community with over 10,000 people, recorded over 600 hours of Twin Flame Ascension School

(TFAS) and Life Purpose classes, and created several other products and companies that are changing the landscape of peoples' lives. Their work teaches self-love, inner peace, and how to have a real relationship with God. The Mirror Exercise, which is at the core of their teaching, empowers people to love themselves completely and take full responsibility for themselves, their feelings, and one's individual experience.

28.     Jeff and Shaleia have developed hundreds of hours of material that can support you in cultivating this sustainable and grounded success in one's own life: Twin Flame Ascension School, Life Purpose Class, Twin Flames: Dreams Coming True e-Course, Twin Flames: Romance Attraction e-Course, their YouTube channel, and their book, *Twin Flames: Finding Your Ultimate Lover*. The school's Facebook community, also named "Twin Flames Universe" (or "TFU"), promotes empowerment, self-improvement, and mindfulness through community engagement.

29.     In addition to Facebook and Instagram accounts and profiles, Twin Flames Universe also has an active Twitter account, @TFlamesUniverse (the "TFU Twitter account").

30.     Twin Flames Universe's social media profiles are designed to help consumers gather information about Jeff and Shaleia, their educational programs, their businesses, their services and the spiritual principles of Twin Flames Universe.  As such, the TFU Twitter account is akin to advertising of services for their business.

31.     Mr. Ayan has earned his professional designation in Business and as an entrepreneur, he has founded multiple successful businesses. With a unique understanding of trauma and the mind, Jeff developed the Mind Alignment Process™ (MAP) after years of helping people successfully heal from the effects of trauma, and subsequently co-founded Plaintiff MAP. It is Jeff's vision to see a world completely healed of trauma cleanly and easily through health and wellness services like those offered by his businesses.

32. MAP is the owner of the applied-for trademark MIND ALIGNMENT PROCESS INC™, USPTO Application Serial No. 88,777,149 in International Class 44, for, *inter alia*, "Providing a website featuring information about alternative healing and wellness, namely, for trauma recovery and military veteran health and wellness."

33. MAP's website <www.mindalignmentprocess.org> (the "MAP Website") is designed to promote and advertise MAP's informational, educational and consulting services based in Michigan.



34. MAP is also the owner of the applied-for design mark used in connection with the MAP Website and on promotional materials for MAP's services, USPTO Application Serial No. 88,777,144 in International Class 44, for, *inter alia*, "Providing a website featuring information about alternative healing and wellness, namely, for trauma recovery and military veteran health and wellness."

35. TFU's Association of Ascension Coaches is an organization of graduate coaches and mentors from Twin Flames Universe's Ascension Coach Training Program, a 13-week training course where future coaches learn how to assist anyone through any challenge they could face in their daily lives using the fundamental spiritual principles of Twin Flames Universe.

36. The Church of Union (COU) is a not-for-profit religious organization which practices Unionism, the religion evolved from the foundational spiritual teachings brought to the world from all the great messengers such as Moses, Buddha, Krishna, Jesus, Mohammed, and many others. It also builds upon principles taught by A Course in Miracles, Yogananda's body of

work, and other spiritual texts based in Truth. At the core of COU's faith and teachings guided by Plaintiffs Jeff and Shaleia are the "Divine Revelations," texts compiled and authored by Plaintiffs Jeff and Shaleia.

37.     While these practices include, *inter alia*, time-honored techniques that are intended to accelerate spiritual development and connections, Plaintiffs' websites, which have been in operation since 2017, do not provide details of same absent authorized access or disclosures, as they consider such information highly confidential and proprietary.

**B.   Defendants' Negative Ad Campaign, Competing Businesses and Unlawful Online Conduct**

38.     The journey to discovery of one's Twin Flame is often elusive and seemingly difficult. Thus, although Plaintiffs have worked tirelessly to avoid situations where students may feel disenchanted by their experiences, unfortunately there is a small group of disgruntled former students who have banded together and conspired with one another, as well as with Defendants' competing businesses.  The object of this campaign of destruction is ostensibly to torment Plaintiffs publicly, but ultimately is intended to drive customers and believers away from Plaintiffs' platforms and services—and towards' Defendants' own business and services.

39.     Beginning in or around early 2019 and continuing to the present, in an intentional effort to divert business away from Plaintiffs and toward Defendants, and to cause injury to Plaintiffs, Defendants (competitors) manipulated and hijacked Plaintiff's Twitter profiles by spewing negative falsities for their own personal gain and to the detriment of Plaintiffs.

40.     In particular, Defendants have posted taunting material and defamatory statements, authored by Defendants, about Plaintiffs and Plaintiffs' services on various forums, blogs and websites across the Internet.

COMPLAINT

41.     Defendants' harassing and defamatory posts purported to convey factual information about Plaintiffs and their services, but instead asserted outright falsehoods, while withholding the factual basis upon which many of their falsehoods are allegedly based.

42.     Among other claims, Defendants' various online statements within the last year accuse Plaintiffs of, *inter alia*, (a) promoting isolation and criminal behavior, like stalking, (b) of "practicing illegal psychotherapy on people," (c) engaging in "abusive" and "emotionally manipulative" conduct designed to "scam" Plaintiffs' students, (d) forcing people in to "unpaid labor," (e) dictating what people should wear, (f) violating persons privacy by posting "intimate details" about people's lives without their consent or permission, and (g) being "con artists."

43.     For instance, Defendant Giacomini has also falsely claimed that Plaintiffs "brainwashed" students and called Plaintiffs' businesses a "cult" and "Scam [Multi-level marketing] MLM Pyramid Scheme." These accusations are false insofar as Plaintiffs, neither individually or collectively, brainwash or manipulate people, much less operate a "cult" or pyramid scheme.

44.     In support of their attacks, Defendants used Twitter, Facebook, YouTube and Reddit to distribute their false and misleading messages in an effort to draw attention to their negative campaign against Plaintiffs.

45.     Upon information and belief, Defendants embarked on this campaign of unfair competition and harassment to promote Defendants' competing businesses and online spiritual wellness platforms, which purportedly function in the same fashion as Plaintiffs' Twin Flames Universe—which they denigrate publicly.

**C. Defendants Have A History Of Dissention Geared Towards Promoting their Businesses**

46.     On or around May 15, 2019, Defendant Giacomini posted in her "Twin Flames Gaia" Facebook group to clients that her business "no longer recommend[s] TFU as it is abusive" and "'[w]e no longer suggest Twin Flames Universe as they gas light and manipulate people." In the same post, Defendant Giacomini promoted her paid wellness and spirituality services.

47.     The above statement is false and misleading as TFU's best students are highly trained in helping others work through their issues. TFU are a group of people who are successful at supporting people in their healing work, and their results prove it. But no one is forced to do anything, nor abused, as everyone associated with TFU has free will and has their (healthy) life choices honored 100%.

48.     On or around July 30, 2019, Defendant Giacomini posted a video on YouTube titled "I survived a Twin Flame **cult!**" (emphasis added) where she states she "spoke out against chasing people which got [her] kicked out of [Plaintiffs'] executive team." She further stated her physical appearance was controlled and was told "to wear more clothes, who to date, what color to dye [her] hair, and where to live."

49.     The above statement is false and misleading as Plaintiffs do not encourage nor condone "chasing people," much less to the point of illegality or harassment, as Defendant insinuated and stated in her video. Further Plaintiffs do not dictate anyone in any style of dress, nor the physical details of their appearance, nor where to live.

50.     In the same Twin Flames Gaia YouTube video (which has nearly 2,500 views to date) Defendant Giacomini falsely claims that she was "abused" and subjected to "emotional manipulation" by Plaintiffs, including members associated with Plaintiffs' businesses, to the

point of "forcing" her to engage in unpaid labor and obsessive behavior.   These statements are untrue. Further, Defendant Giacomini's video falsely claimed that Plaintiffs engage in "experimental, illegal psychotherapy." This is also untrue as Plaintiffs businesses neither claim to nor actually engage in such conduct.

51.     Upon information and belief, Defendant Giacomini posted the above statements concerning Plaintiffs and specifically TFU, to promote her own business and services, insofar as they were posted on her business YouTube account (www.youtube.com/twinflamesgaia).

52.     The description of each video contains advertisements for her business as follows:

*Want some help on your Twin Flame Journey? I offer FREE consultations here to get you started! https://calendly.com/ellegaia/30min*

*For sessions and guidance: https://www.twinflamesgaia.com*

53.     On August 3, 2019, Giacomini and Katsale created an @Twinflames.Universe Instagram account where they posted distorted photos of Mr. Ayan and stated TFU is a "sex cult," and practices "gay conversion" therapy. Defendant Giacomini and Katsale's posts often include images of Mr. Ayan (despite their distorted and harassing nature) and thus giving unsuspecting Twitter users the impression that the @Twinflames.Universe is Plaintiffs, when in reality, it is Plaintiffs' competitors: Defendants Giacomini and Katsale.

54.     The above statements are false as no one is forced to partner with another person against their will for sexual purposes, nor are any homosexuality conversion techniques or rhetoric permitted, endorsed or performed.  Plaintiffs and Plaintiffs' services are inclusive and welcome to all persons, regardless of gender identity or sexual orientation.

55.     On or about August 12, 2019, Defendant Giacomini posted on Reddit.com (accessible on the Internet at reddit.com/r/cults/comments/cp4bzu/warning_on_jeff_and_shaleia_twin_flames_universe/),

stating "Warning on Jeff and Shaleia Twin Flames Universe Cult **Scam MLM Pyramid Scheme.**"  Within the same post, Giacomini shared an article about TFU being a "cult" and states "[t]his article says it all on what one of my friends went through. Many people are in, and people need support in getting out. **they have a girl hostage in their basement and are grooming her**." (emphasis added). The aforementioned statements are absolutely false and misleading. None of the Plaintiffs have anyone "hostage" nor are even remotely holding anyone against their will in their "basement," or anywhere.

56.     On August 17, 2019, Defendants again collectively banded together to draft, author and disseminate a defamatory and misleading email blast to hundreds of Plaintiffs' students. For the purpose of this negative email blast, Defendants created the email name and address **TFU** Abuse "**tfu**abuse@gmail.com" (emphasis added).

57.     Giacomini—a former student, associate and volunteer of Plaintiffs—had access to many TFU's students' email addresses during her period of engagement with Plaintiffs and misappropriated such email addresses to send the aforementioned emails, as well as to directly advertise her competing wellness businesses.

58.     Upon information and belief, Giacomini—a former student, associate and volunteer of Plaintiffs—then attempted to access Plaintiff TFU's Twitter Account, without authorization, using passwords or email accounts that belonged to Plaintiff.

59.     Then, on August 23, 2019, TFU's Twitter Account was hacked, and the profile image and header were replaced with the same photos from Giacomini and Katsale's impersonating @Twinflames.Universe Instagram account:



60.    Defendants Giacomini and Katsale changed Plaintiffs' "bio" on the official TFU

Twitter account to read: "twin flames universe is a cult. Help take it down by calling local law

enforcement."

61.    Defendant Giacomini and Katsale then created several tweets on Plaintiffs'

account, further denigrating and defaming Plaintiffs, claiming "Maybe it's not a sex cult (yet) but

it's still potentially dangerous." "Also J[eff Ayan] & S[haleia Ayan] & TFU should offer an

apology to all #LGBTQA+ people who they have tried to #gayconvert . . ." As set forth above,

the aforementioned tweets are absolutely false and misleading.

62.    Other Defendants have participated in Giacomini and Katsale's negative ad

campaign and social media manipulation by either "liking" or sharing Giacomini and Katsale's

defamatory and misleading posts.  In addition, as set forth above, they have engaged in their own

conduct designed to damage Plaintiffs' reputation.

63.    For instance, on or around May 3, 2019, Defendant Katsale published a video on

the YouTube channel for his business Ascension Express (youtube.com/ascensionexpress),

which denigrates Plaintiffs TFU and Mr. and Mrs. Ayan, while promoting his own services, stating "welcome aboard Ascension Express." Specifically, Katsale false claimed that Plaintiffs attempted to "manipulate [him]", that Mr. Ayan was "mentally unstable," and that Mr. and Mrs. Ayan were "codependent narcissists preying on innocent empathetic people who had already suffered from past trauma in relationship[s]." However, nothing could be further from the truth.

64.      In Katsale's video, he further claims that he has "heard from other students that their bank accounts were drained, they became jobless because of this male leader [Mr. Ayan] and his wife [Mrs. Ayan], he and his wife have thrown out and slandered their former students' names and reputations, that they have forced students to break up with [their] spouse. . ."  Each of these aforementioned statements are false and misleading.

65.      Katsale ends his video by further advertising his business, claiming "please ive this video a 'like,' subscribe to this channel and hit the bell notification icon, as it helps my channel grow and lets me know that I should keep uploading more awesome videos."

66.      Defendant Giacomini was one of the first to comment on Katsale's video to promote her services in the comment section of Katsale's video:



67.      The "mine" that Defendant Giacomini refers to is her own July 30, 2019 promotional video referenced above (*see* paragraph 48).Similarly, on or around December 6, 2019, Defendants Giacomini and Hugues exchanged messages on Facebook disparaging Plaintiffs and planning to "call" each other to further discuss their plans.

68.      Then, on or about January 18, 2020, Defendant Kaloczi publicly joined the other Defendants' campaign of denigration by posting a video on her business's Facebook page

entitled, "For anyone not sure about their **twin flame community**! #cult." In Kaloczi's video, she details Plaintiffs' private and proprietary coaching techniques that she claims to have learned from Plaintiff TFU's programs. She further admits that she "coached people all over America" using TFU's methods, then repeated similar tropes espoused by Giacomini above, but suggesting that Plaintiffs' "brainwashed" students and calling Plaintiffs' businesses a "cult." These accusations are false insofar as Plaintiffs, neither individually or collectively, brainwash or manipulate people, much less operate a "cult".

69.     Defendant Hugues also "liked" on Defendant Kaloczi's January 18th post.

**D.  The Vice Media Articles and Defendants' Republications**

70.     Apparently dissatisfied that their direct-to-consumer, online campaign of negative advertising was initially unsuccessful in promoting their competing business or disparaging Plaintiffs enough, Defendants banded together to amplify their negativity by lying to a Toronto-based reporter for Vice Media.

71.     As a part of their scheme and conspiracy, Defendants collectively convinced the Vice Media reporter to publish, on or about February 5, 2020, a fantastical and false account of Defendants' "experiences" with Plaintiffs in Michigan—which painted an impressionist caricature of Twin Flames Universe's actual business and was otherwise filled with outright misleading statements and lies. A true and correct copy of the February 5th Vice Article is annexed hereto as **Exhibit A**.

72.     Upon information and belief, Defendants chose the Toronto-based reporter and Vice Media (a company founded in Canada), principally because (a) Plaintiffs have conducted workshops on Toronto in 2019, and (b) that Vice Media's article would target U.S. consumers in close-proximity to Toronto, such as in Southeast Michigan.

73.     In the February 5th Vice Article, Defendants collectively claim that Plaintiffs

have:

    a.    "gaslit and manipulated [students] into volunteering hundreds of hours of free labour, exploited for thousands of dollars, discouraged from seeking professional mental healthcare, and cut off from their families. . .unless they send money [to Plaintiffs]."

    b.    "coached [students] to ignore rejection and escalate contact with her so-called twin flame, even after he filed a restraining order. She says the group encouraged her to violate that court order, resulting in an arrest and ongoing legal issues."

    c.    "coached [students] not to speak to their families, unless they support the group or send money."

74.    In the February 5th Vice Article, Defendant Giacomini claimed she joined Twin Flames Universe in the aftermath of a serious health scare and a breakup with an abusive partner, but falsely stated that she was also coached to ignore rejection and escalate contact with her so-called Twin Flame, even after he filed a restraining order. She further claims that Plaintiffs encouraged her to violate that court order, resulting in an arrest and ongoing legal issues.

75.    The aforementioned statements are completely untrue as Defendant Giacomini had a severe problem with stalking the person who she believed to be her Twin Flame. However, Plaintiffs absolutely in no way ever condone someone breaking the law, or stalking people to the point of obsession. Defendant Giacomini's own conduct is not a reflection of Plaintiffs' teachings. Plaintiffs encourage and expect their students to respect boundaries of others and respect the law.

76.    Defendants specifically intended for the collective scheme to destroy Plaintiffs to gain traction. Indeed, in the February 5th Vice Article, Defendant "ex-members . . . have since found each other and banded together to warn others."

77.     Then, on that same February 5, 2020, Defendant Giacomini shared Vice Article

on her Facebook page and falsely stated "they [Jeff and Shaleia] target vulnerable people."

78.     Also, on February 5, 2020, Defendant Katsale shared the Vice Article on his

Facebook page:



79.     Defendant Katsale then edited his May 3, 2019 video to include a "pinned

comment" which republished the Vice Article, stating "UPDATE: A milestone victory **in the**

**collective effort to expose the scumbags**. Please read and share it with everyone you know.

Thank you so very much for your continued support in this journey ladies and gentlemen:

https://www.vice.com/en_ca/article/v747x4/this-youtube-school-promised-true-love-students-

say-they-got-exploited-instead" (emphasis added).

80.     Upon information and belief, this "collective effort" was a reference Defendants'

Katsale, Giacomini, Hugues and Kaloczi's group effort to publicly denigrate Plaintiffs, while

simultaneously promoting each of their respective transformational coaching businesses.

81.     Further, on February 7, 2020, Defendant Giacomini reached out to Plaintiffs students by posting in TFU Forum and directly messaging them the defamatory and misleading Vice Article.

82.     Then, on February 14, 2020, Defendant Giacomini again republished the Vice Article in various social media groups, while promoting her own competing business Ascended Wellness.

83.     On or around March 9, 2020, Plaintiffs TFU sent Defendants a cease and desist letter demanding they retract their false statements set forth in the February 5th Vice Article. To date, Defendants have refused to comply with Plaintiffs' demands to cease and desist.

84.     Instead, Defendants campaigned to manipulate the truth to the Vice Media reporter again, spurring her to publish, on March 11, 2020, another scathing and defamatory article based on Defendants' statements regarding Plaintiffs.  A true and correct copy of the March 11th Vice Article is annexed hereto as **Exhibit B**.

85.     Defendants Giacomini repeated many of her false and defamatory statements from the February 5th Vice Article again in the March 11th Vice Article.

86.     However, this time, Defendant Hugues added to the cacophony of lies by falsely claiming that Plaintiffs encouraged Hugues, who is trans, to undergo and promote "gender conversion coaching" and that Plaintiffs "coached" students "who identify as gay or bisexual. . .into pursuing new gender identities that fit with Twin Flames' hetero-centered ideas." This is false as no one is forced to engage in any gender conversion techniques or rhetoric permitted, endorsed or performed.  Plaintiffs and Plaintiffs' services are inclusive and welcome to all persons, regardless of gender identity or sexual orientation.

87.     Similar to the above, Defendant Giacomini reposted the March 11th Vice Article on her business's Facebook account.  Defendants Hugues commented on Defendant Giacomini's

posts.

**E.  Defendant Giacomini Copied Plaintiff MAP's Trademark and Website to further Cause Confusion**

88.    In addition to engaging in the manipulation campaign set forth above, Defendant Giacomini has also targeted Plaintiff MAP by attempting to crudely copy the style, look and feel of MAP's design mark and website on the Facebook page for Ascended Wellness.

89.    Compare MAP's design mark and MAP Website:



with Ascended Wellness's Facebook page:



90.    While imitation is a form of flattery, Defendant Giacomini's act in changing her Facebook page to mimic and copy the total image and overall appearance of MAP's design mark and website was done to stoke confusion with customers who associated such imagery and marks with Plaintiff MAP.

21

COMPLAINT

91.     In reality, Defendant Giacomini, along with the other Defendant accomplices, are competitors of and not affiliated with Plaintiffs.  Moreover, upon information and belief, Defendants knew that their fabrications of Plaintiffs' dealings with them and any other students were false at the time Defendants made the above defamatory statements, such that Defendants' statements regarding Plaintiffs are false and/or were made with reckless disregard as to the truth or falsity of same.

92.     In other words, Defendants perpetrated as simply former students to denigrate Plaintiffs' online advertisements for the sole purpose of harming Plaintiffs' reputation and causing them to lose revenue, as the statements set forth above bear directly on Plaintiffs' services, professional capabilities, business practices, and treatment of their clients and students—all key aspects of Plaintiffs' business and factors that any person considers before choosing a spiritual guide, church or life coach.

93.     As a result of Defendants' misconduct, Plaintiffs have been and continue to be substantially and irreparably harmed.

F.   **Financial Damage to Plaintiffs' Reputations and Business**

94.     Plaintiffs had and continue to have contractual relationships with their students, followers, and customers. These contracts include annual or monthly installment plan subscriptions for access to various portions of Plaintiffs' websites.

95.     Defendants were keenly aware of Plaintiffs' contracts, not only because they were former students or family members of one of Plaintiffs' student, but also because their defamatory statements included negative associations with Plaintiffs' contractual business models, including statements within the Vice Articles denigrating Plaintiffs' website which identifies and details contracts.

96.     The Defendants scripted and caused to be disseminated the above statements in

order to interfere with Plaintiffs' contractual relationships with their students, followers, and customers, and upon information and belief, to injure Plaintiffs' business by inducing Plaintiffs' their students, followers, and customers s and prospective students to cease doing business with Plaintiffs.

97.    Since the appearance of the defamatory and misleading statements, several students have claimed to have read the Vice Articles and/or online posts and have emailed, called or messaged to inquire about the truth of the false statements therein and terminated contracts with Plaintiffs.

98.    As a direct and proximate result of Defendants' defamatory conduct described herein, a number of Plaintiffs' students and customers have refused to start and/or continue business with Plaintiffs.

99.    Specifically, on or about February 10, 2020, Plaintiffs' student S.B. cancelled their annual subscription to TFU's All Class Pass, less than two months in to S.B.'s contract. S.B. stated that the reason for S.B.'s cancellation was the Defendants' statements about Plaintiffs made in the February 5th Vice Article. As a result of S.B.'s cancellation, Plaintiff TFU lost approximately $2,519.00 on the remaining value of S.B.'s contract.

100.    On or about February 22, 2020, Plaintiffs' student G.N. cancelled their annual subscription to TFU's Life Purpose Class, just over one month in to G.N.'s contract.  G.N. stated that the reason for G.N..'s cancellation was the Defendants' statements about Plaintiffs made online, including referencing accusations derived solely from Defendants' statements of TFU being a "cult, angry and abusive". As a result of G.N..'s cancellation, Plaintiff TFU lost approximately $1,890.00 on the remaining value of G.N.'s contract.

101.    On or about February 24, 2020, Plaintiffs' student J.O. cancelled their annual subscription to TFU's One Class Pass, less than one month in to J.O.'s contract.  J.O. stated that

the reason for J.O.'s cancellation was the Defendants' statements about Plaintiffs made in the February 5th Vice Article. As a result of J.O.'s cancellation, Plaintiff TFU lost approximately $1,309.00 on the remaining value of J.O.'s contract.

102.    Specifically, on or about February 24, 2020, Plaintiffs' student A.T. cancelled their annual subscription to TFU's One Class Pass, less than one month in to A.T.'s contract. A.T. stated that the reason for A.T.'s cancellation was the Defendants' statements about Plaintiffs made in the Vice Articles. As a result of A.T.'s cancellation, Plaintiff TFU lost approximately $1,309.00 on the remaining value of A.T.'s contract.

103.    While Plaintiffs' businesses persevere, Defendants' campaign to defame and injure Plaintiffs have caused their students significant concern about the propriety of Plaintiffs' teachings, services and programs, such that the trend of fewer students is likely and the risk of losing students is tangible and real.  Without their students, followers, and customers, Plaintiffs' will have no businesses.  This damage is in addition to the permanent and irreparable harm to Plaintiff's professional and personal reputations that Defendants' defamatory conduct has caused (and will continue to cause unless enjoined).

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE LANHAM ACT
### UNDER 15 U.S.C. § 1125(a)(1)(B)

104.    Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 104, with the same force and effect as if set forth in detail herein again.

105.    Defendants' publication of false and misleading statements about Plaintiffs and Plaintiffs' services constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

106.    Defendants' publication of false and misleading statements about Plaintiffs and Plaintiffs' services is likely to deceive consumers as to the nature and quality of Plaintiffs and Plaintiffs' goods and/or services.

107.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered and will continue to suffer significant monetary and reputational injury in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
## DEFAMATION PER SE, INJURIOUS FALSEHOOD, TRADE LIBEL and COMMERCIAL DISPARAGEMENT

108.    Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 104, with the same force and effect as if set forth in detail herein again.

109.    Defendants have intentionally made knowingly false statements of fact about Plaintiffs and Plaintiffs' services as set forth above.

110.    These statements were made maliciously and willfully and were intended to cause harm to Plaintiffs' businesses and reputations.

111.    The aforementioned statements were false when made and Defendants knew or should have known that the statements were false when made.

112.    These statements were made maliciously and willfully and were intended to cause harm to Plaintiffs' reputations.  The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiffs.

113.    The aforementioned statements were made of and concerning Plaintiffs and were so understood by those who read Defendants' publication of them.

114.     These statements constitute injurious falsehoods and trade libel, which impugn the integrity of Plaintiff and the quality of Plaintiffs' services. These statements were expressly directed at Plaintiff.

115.     These statements were false and were published to third parties in this district and across the Internet.

116.     Defendants have no privilege to assert their false and disparaging statements.

117.     As a result of Defendants' acts, Plaintiffs have suffered irreparable damage to its reputation and further special damages in the form of lost sales and profits, in an amount to be determined at trial.

118.     As a result of the willful and malicious nature of the defamation, Plaintiffs are entitled to punitive damages.

## THIRD CLAIM FOR RELIEF
## <u>UNFAIR COMPETITION</u>

119.     Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 104, with the same force and effect as if set forth in detail herein again.

120.     Defendants authored and are using the misleading social media campaigns set forth above to divert users searching for Plaintiffs to Defendants' competing businesses, Twin Flames Gaia and Ascended Wellness

121.     Defendants posted false and defamatory statements about Plaintiffs online.

122.     As set forth above, Defendants posted—on a widely-disseminated, public forum—misleading and defamatory statements and misrepresentations about Plaintiffs concerning the nature, characteristics and/or quality of Plaintiffs' services.

COMPLAINT

123.    Further, Defendant Giacomini copied the look and feel of MAP's logo and website in an effort to confuse and lure customers away from Plaintiffs, and towards her businesses.

124.    The false and misleading representations set forth above were made in the scope of commerce by a competitor who hijacked Plaintiffs' own promotion of their services—even going so far as to convert Plaintiffs' Twitter account to spew the false negativity.

125.    Moreover, Defendants' action did harm Plaintiffs and made Plaintiffs believe that they would be damaged by Defendants' misrepresentations.

126.    Considering Defendants knew that their statements concerning Plaintiffs were false and/or at best, misleading, and that their activities of impersonation and deception would confuse consumers in to believing that Defendants' anonymous attacks were unbiased, Defendants had no justification to assert the misrepresentations other than to harm Plaintiffs' business by exploiting the earned reputation of Plaintiffs and coopting Plaintiffs' social media profiles for Defendants' own negative advertising.

127.    These acts and others stated above constitute a pattern of common law unfair competition, entitling Plaintiffs to recovery of compensatory and punitive damages, in an amount to be proved at trial, including compensation for Plaintiffs' time, effort and attorney's fees.

**FOURTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND**
**<u>PROSPECTIVE CONTRACTUAL RELATIONS</u>**

128.     Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 104, with the same force and effect as if set forth in detail herein again.

129.     Plaintiffs had existing contracts with its customers and students, and reasonably expected that its contractual relationships with its customers would continue into the future.

130.     Defendants knew of Plaintiff's contracts, as they were reported online, and Defendants were former students or family members of current students of Plaintiffs.

131.     By the wrongful conduct described above, Defendants internationally and improperly interfered with Plaintiffs' contracts with its customers and did so with the intent and purpose of damaging Plaintiffs' business.

132.     Defendants' interference caused Plaintiffs' customers confusion and to cease doing business with Plaintiffs.

133.     As a result of Defendants' actions, Plaintiffs have been and continue to be damaged in an amount to be determined at trial.

134.     Plaintiffs have also suffered and will continue to suffer irreparable harm in the form of damage to their reputations as a result of Defendants' conduct described herein.

135.     While an award of damages may be adequate to compensate Plaintiffs for the loss of particular contracts or customers, an award of damages will not be adequate to compensate Plaintiffs for the damage to their reputation caused by Defendants.  Plaintiffs have suffered and will continue to suffer irreparable harm unless injunctive relief is granted.

**FIFTH CLAIM FOR RELIEF**
**<u>CONSPIRACY</u>**

28

136.    Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 104, with the same force and effect as if set forth in detail herein again.

137.    Defendants published the above statements concerning Plaintiffs and created the impersonating social media profiles, with the specific intent and desire to injure Plaintiffs by fraud and deceit.   Defendants' course of conduct in doing so was motivated by spite and malevolence and has no legal justification.

138.    Defendants as identified herein have formed a combination and are acting in concert together to commit one or more unlawful or otherwise actionable acts as set forth herein, including actions by unlawful means to commit these unlawful or otherwise actionable acts.

139.    Defendants formed an agreement to inflict a wrong against, or otherwise injure, Plaintiffs as set forth herein.

140.    As a result, every member of said conspiracy, which includes all Defendants herein, is equally and vicariously liable for the damages inflicted upon Plaintiffs regardless of whether that individual Defendant committed the overt act that led to, or proximately caused, the injury or damages to Plaintiffs.

141.    By reason of the foregoing, Defendants have caused irreparable harm to Plaintiffs' personal and professional reputations, putting the future of the business in jeopardy— as well as their ability to defend their reputations.

142.    As a result of Defendants' past and continued wrongful acts, Plaintiffs have suffered damages to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## <u>CONVERSION and TRESPASS TO CHATTELS</u>

143.   Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 104, with the same force and effect as if set forth in detail herein again.

144.   Plaintiff TFU was the rightful owner and operator of the TFU Twitter account.

145.   By reason of the foregoing, Defendant Giacomini improperly hijacked and stole the TFU Twitter account.

146.   As a result of Defendant Giacomini's actions, Plaintiffs have suffered substantial damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants awarding Plaintiffs:

1.   Enter a judgment declaring that Defendants' conduct violates 15 U.S.C. §1125(a);

2.   Enter a judgment declaring that Defendants' conduct constitutes unfair competition;

3.   Enter a judgment declaring that Defendants' conduct constitutes defamation;

4.   Enter a judgment declaring that Defendants' conduct constitutes injurious falsehood;

5.   Enter a judgment declaring that Defendants' conduct constitutes tortious interference;

6.   Enter a judgment declaring that Defendants' conduct constitutes civil conspiracy;

7.   Enter a judgment declaring that Defendants' conduct constitutes conversion;

8.   Enter a judgment declaring that Defendants' conduct constitutes trespass to chattels;

9.   Award Plaintiffs compensatory damages according to proof at trial but in an amount not less than $1,000,000.00;

COMPLAINT

10.     Award Plaintiffs punitive damages pursuant to the Lanham Act and the common

law, due to Defendants' willful and wanton behavior;

11.     That Defendants be ordered to pay Plaintiffs all damages sustained, reasonable

costs, expenses, and attorneys' fees in prosecuting this action, pursuant to 15

U.S.C. § 1117;

12.     Enter a temporary and permanent order, enjoining Defendants from publishing the

false advertising statements identified above, in relation to themselves or

Plaintiffs, or any false statements similar thereto, and directing Defendants and

their respective agents, servants, employees, successors and assigns, and all other

persons acting in concert with or in conspiracy with or affiliated with Defendants,

to remove, delete, or otherwise disable such reviews and posts;

13.     That the Court issue an Order at the conclusion of the present matter directing

Defendants to undertake such remedial efforts as the Court deems necessary to

restore Plaintiffs' reputation;

14.     That Plaintiffs be awarded pre- and post-judgment interest to the maximum extent

allowed by law;

15.     Award Plaintiffs reasonable attorney's fees, costs and disbursements in this civil

action; and

16.     Enter such other and further relief to which Plaintiffs may be entitled as a matter

of law or equity, or which the Court determines to be just and proper.


## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 23rd day of June, 2020.                    Respectfully submitted,

                                                      s/ *Matthew Kerry*
                                                      MATTHEW KERRY (P81793)
                                                      214 S Main St. Suite 200
                                                      Ann Arbor, MI 48104
                                                      Telephone: (734) 263-1193
                                                      Facsimile: (734) 661-0765
                                                      Email: matt@kerrylawpllc.com


                                                      LEWIS & LIN LLC

                                                      David D. Lin (*pro hac vice* forthcoming)
                                                      Justin Mercer (*pro hac vice* forthcoming)

                                                      Attorneys for Plaintiffs