UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TWIN FLAMES UNIVERSE.COM, INC.

 Plaintiff(s)      Case No.: 2:20-cv-11659
            Hon. Gershwin A. Drain

v.

ARCELIA FRANCIS HUGUES

 Defendant(s)

Defendant's 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction[1]

   Defendant ARCELIA FRANCIS HUGUES ("Defendant" or "Ms. Hugues"),

appearing *pro se*, respectfully submits this 12(b)(2) Motion to Dismiss Plaintiff's

Complaint on the Grounds of Lack of Personal Jurisdiction (the "Motion") and

---

[1] NOTICE OF LIMITED SCOPE ASSISTANCE: This document was drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). This document was prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.

1

respectfully requested that this matter be dismissed for the reasons set forth in the

attached Brief in support of the Motion.

> Respectfully submitted,
>
> /s/ Arcelia Francis Hugues (w/ perm)
> By: Arcelia Francis Hugues, Defendant
> *Pro Se*
> 7994 State Route 20
> Madison, NY 13402
> Telephone: (315) 404-9442
> Email: archaicarcelia@zoho.com

Dated: September 16, 2020

## NOTICE OF LIMITED SCOPE ASSISTANCE

This document was drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). This document was prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.

Katie Warwick, 3L, University of Detroit Mercy, on the Brief.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TWIN FLAMES UNIVERSE.COM, INC.

     Plaintiff(s)

v.

ARCELIA FRANCIS HUGUES

     Defendant(s)

Case No.: 2:20-cv-11659
Hon. Gershwin A. Drain

Defendant's Brief in Support of 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction[2]

     Defendant ARCELIA FRANCIS HUGUES ("Defendant" or "Ms. Hugues"), appearing *pro se*, respectfully submits this Brief in support of her 12(b)(2) Motion to Dismiss Plaintiff's Complaint on the Grounds of Lack of Personal Jurisdiction.

---

[2] NOTICE OF LIMITED SCOPE ASSISTANCE: This document was drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). This document was prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.

## MOST RELEVANT AUTHORITIES

### CASE LAW:

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball*, Inc. 751 F.3d 796, 802 (2014).

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007).

*Calder v. Jones*, 465 U.S. 783 (1984).

*Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006).

*Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 413- 414 (1984).

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

*Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F. Supp. 2d 929, 934 (E.D. Mich. 2011).

*Magna Powertrain De Mexico S.A. DE C.V. v. Momentive Performance Materials USA LLC*, 192 F.Supp.3d 824 (E.D. Mich. 2016).

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

*Walden v. Fiore*, 134 S. Ct. 1118 (2014).

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119 (W.D. Pa. 1997).

### STATUTES & COURT RULES:

Fed. R. Civ. P. 12(b)(2)

MCL 600.701

MCL 600.745

4

**INTRODUCTION**

Ms. Hugues' Motion seeks dismissal of the claims against her based on a lack of personal jurisdiction. As set forth herein, Ms. Hugues' only contacts with Michigan were both fleeting and serendipitous, and given her lack of even minimum contacts with Michigan, fundamental, well-established principles of fairness and Due Process demand that the claims against Ms. Hugues be dismissed.

**STATEMENT OF PROCEDURE AND FACTS**

Plaintiffs, Twin Flames Universe.com, Inc. ("TFU"), Mind Alignment Process Inc. ("MAP"), Jeffrey Ayan ("Mr. Ayan"), and Shaleia Ayan ("Ms. Ayan") (collectively, "Plainiffs"), filed this lawsuit against four non-resident individuals, including Ms. Hugues (the "Complaint").[3] The Complaint seeks declaratory and injunctive relief and money damages against Ms. Hugues based on alleged common law tort actions and alleged violation(s) of the Lanham Act. 15 U.S.C. § 1051 *et seq*. The Complaint makes broad, collective allegations against "Defendants" and a handful of specific allegations against Ms. Hugues, that are, at best, misleading. The Complaint conflates two Vice Media articles (only one of which mentions Ms.

---

[3] On the same day they filed the Complaint, Plaintiffs filed a second complaint against four other non-resident defendants, Misty Lenae Warner, Louise Cole, Gregory Abbey, and Andrew Scott. See *Twin Flames Universe.Com Incorporated et al* v. *Warner et al*, No. 2:20-cv-11660 (the "Second Twin Flames Case"). The Second Complaint makes allegations and claims similar to those in the Complaint against the defendants in that action, but it does not allege a Lanham Act violation.

Hugues and only the other of which mentions "Michigan") in an effort to create a false impression that Ms. Hugues was targeting Michigan when she spoke with Vice Media. It also conflates Ms. Hugues' activities as a student of Plaintiffs and a consumer of their web-based training and seminars with a domain name registered to Ms. Hugues, in an effort to create a false impression that Ms. Hugues had purposely availed herself of the privilege of transacting business in Michigan. As detailed in her declaration, **Exhibit A**, other than a few referral payments from TFU totalling less than $500.00, Ms. Hugues, to her knowledge, has never transacted business in Michigan either in person or online. Ms. Hugues did purchase access to some of TFU's web-based services.

The Complaint also baselessly claims that Ms. Hugues intentionally "chose" a Toronto reporter and a Toronto media outlet in an effort to direct her comments at Southeastern Michigan consumers. Complaint, ¶72. However, there is no evidence that Ms. Hugues' chose anyone. She was contacted by the Vice Media reporter for the second article. Furthermore, while the Complaint alleges that the reporter was "Toronto based" and characterizes Vice Media as a Toronto media outlet, Vice Media's website indicates that the reporter, Sarah Berman is based in Vancouver, British Columbia, see **Exhibit B**. While Vice Media apparently has an office in Toronto, its website identifies Brooklyn, New York, as its North American headquarters. See **Exhibit C**.

6

As set forth in her declaration, Ms. Hugues has never been to Michigan, and, except for the payments noted above and her purchases as a consumer of TFU products, has, to the best of her knowledge, never transacted business in Michigan. **Exhibit A**, Declaration, ¶4. Since 2016, she has lived in Madison County, New York. **Exhibit A**, Declaration, ¶3. With the exception of one in-person interaction that took place in New York, all her interactions with Plaintiffs were online, which is where Ms. Hugues learned about Plaintiffs' business. **Exhibit A**, Declaration, ¶9. The handful of referrals she made to TFU were made through TFU's online forum on their website. **Exhibit A,** Declaration, ¶7. While Ms. Hugues had a general understanding that Mr. Ayan and Ms. Ayan were operating their business from some undisclosed, Michigan location, that location was never confirmed to her until she was served with this lawsuit, and, furthermore, it was irrelevant to her interactions with them. **Exhibit A,** Declaration, ¶8. Furthermore, any alleged harm to Plaintiffs has nothing to do with Michigan, but rather, flows through Plaintiffs' online presence.

Finally, Plaintiffs motives for bringing this lawsuit in Michigan are suspect, given their threats Ms. Hugues (and, apparently, to others[4]) to subpoena her, "to courts in Michigan, where you don't live, and you will have to pay travel expenses,

---

[4] See Motion to Dismiss filed in the Second Twin Flames Case, Doc. No. 5, p. 10; Doc. 5-2, Exhibit 2.

hotels, food, court fees, lawyer fees in addition to the money we sue you for." See also, **Exhibit D**, Cease and Desist Letter.

## ARGUMENT

Plaintiffs cannot meet their burden of establishing either general or limited personal jurisdiction over Ms. Hugues in the State of Michigan. Ms. Hugues was not served in Michigan, has never been to Michigan, nor has she taken any action that could be construed as consent to being sued in Michigan. MCL 600.701; MCL 600.745. Furthermore, because Plaintiffs cannot establish that Ms. Hugues has minimum contacts with the Michigan, and because haling Ms. Hugues into this forum would violate notions of fair play and substantial justice, neither can this Court exercise long-arm jurisdiction over Ms. Hugues.

The plaintiff bears the burden of making a *prima facie* showing that the court's exercise of personal jurisdiction over non-resident defendants is warranted. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544 (6th Cir. 2007); see also *Denham v. Sampson Invs.*, 997 F. Supp. 840, 842 (E.D. Mich. 1998). Plaintiffs must prove, "by affidavit or otherwise," specific facts and evidence demonstrating the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In other words, Plaintiffs cannot rely solely on their pleadings. Moreover, Plaintiffs must demonstrate personal jurisdiction is warranted over each non-resident

defendant independently. *Days Inns Worldwide, Inc*. v. Patel, 445 F.3d 899, 904 (6th Cir. 2006).

Plaintiffs have failed to establish this Court has personal jurisdiction over Ms. Hugues in accordance with either Michigan's general personal jurisdiction statute, MCL 600.701 or with Michigan's long-arm statute, MCL 600.705 and the Due Process Clause, respectively. See, e.g., *Magna Powertrain De Mexico S.A. DE C.V. v. Momentive Performance Materials USA LLC*, 192 F.Supp.3d 824 (E.D. Mich. 2016). In *Magna*, Judge Lawson considered whether the Defendant consented to general personal jurisdiction in Michigan "by registering to do business in Michigan." *Id*. at 826. Unlike the Defendant in *Magna*, Ms. Hugues has never been in Michigan, never registered to do business in Michigan, and her only contacts with Plaintiffs were in New York or online and were primarily as a consumer of Plaintiffs' online services. *Zippo Mfg. Co. v. Zippo Dot Com, Inc*. 952 F. Supp. 1119, 1125 (W.D. Pa. 1997) (reasoning that there is a distinguishable difference between knowingly and intentionally doing business over the Internet, and interacting with a market over the Internet as a consumer). The only "earnings" Ms. Hugues received through Plaintiffs were *de minimis* payments of less than $500.00 for referrals she made as a TFU student. **Exhibit A,** Declaration ¶6. Such referrals were made through TFU's passive, open forum on Facebook, and none of the payments were made through Twin Flames Transcendence ("TFT"). Declaration ¶6. As in *Magna*,

neither is there any evidence that Ms. Hugues purposefully availed herself of the privilege of doing business in Michigan. *Id.* To the contrary, all of her activity with TFU was either online or in New York.

Neither can Plaintiffs meet their burden of establishing personal jurisdiction over Ms. Hugues under Michigan's long-arm statute, MCL §600.705.

## I. Michigan's Long-Arm Statute

MCL §600.705 states:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Plaintiffs allegations appear to seek to rely on paragraphs (1) and (2) of the statute. Plaintiffs' claims in this matter do not arise from Ms. Hugues' transaction of business in Michigan, but rather are based on allegedly tortious conduct online she engaged in her home residence in Madison County, New York.

Ms. Hugues did not purposefully avail herself of the privilege of doing business in the State of Michigan. Even if this Court finds Ms. Hugues' past involvement with TFT is relevant, its business was not purposefully directed at the State of Michigan, and, to Ms. Hugues knowledge, none of its virtual contacts were Michigan residents. While it is not impossible that Ms. Hugues or TFT may have connected virtually with someone in Michigan, "the mere likelihood that product will find its way into the forum" does not fulfill the purposefully availing requirement. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).

11

In other words, even if Ms. Hugues with her involvement with TFT had serendipitously and unknowingly connected with someone located it Michigan, such contact was random, fortuitous, attenuated, and unintentional. Such insignificant contacts do not warrant exercising personal jurisdiction.

Courts have tried to determine what constitutes "purposefully availing" oneself to a forum over the Internet, and many have applied the "Zippo Sliding Scale." *Zippo Mfg. Co.* 952 F. Supp. at 1124; see also *Neogen Corp. v. Neo Gen Screening,* 282 F.3d 883 (6th Cir. 2002). This Court has recognized and applied the Zippo Sliding Scale to determine what constitutes "purposeful availment" over the Internet. *Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F. Supp. 2d 929, 934 (E.D. Mich. 2011) (Judge Cohn noting that the Zippo Sliding Scale analysis is beneficial when examining whether a defendant's conduct over the Internet should warrant this Court exercising personal jurisdiction).

The Zippo Sliding Scale establishes a spectrum of Internet activity. *Zippo,* 952 F. Supp. at 1124. On one end of the spectrum, personal jurisdiction is proper in situations "where a defendant clearly does business over the Internet," which requires the defendant to enter into contracts with foreign defendants knowingly and repeatedly. *Id*. On the opposite end of the spectrum, the court will not exercise personal jurisdiction over defendants that have simply "posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id*. "A passive

Web site does little more than make information available to those who are interested in it;" therefore, it does not warrant personal jurisdiction. *Id*. The middle of the spectrum consists of interactive websites where users are able to exchange information. This middle ground is highly circumstantial, and jurisdiction is evaluated based on the level of interactivity and the nature of information exchanged. *Id*. Ms. Hugues' conduct is clearly closer to the latter, passive end of the spectrum.

In respect to Ms. Hugues' alleged business with TFU, Ms. Hugues was not availing herself to conducting business in Michigan when she purchased digital education materials from TFU, nor when she provided a handful of referrals to TFU. At no point was Ms. Hugues conducting business on behalf of TFU or an employee of TFU. Ms. Hugues was by definition a consumer of TFU, and she made virtual payments from her residence in New York via PayPal to access TFU's digital educational materials. Her invoices for said materials did not contain any physical address or indication of TFU's geographic location.

Moreover, TFU offered its consumers a promotion for referring their services, which included nominal monetary bonuses and free virtual coaching sessions. As a consumer of TFU, Ms. Hugues, through TFU's passive, open Facebook forum, referred TFU's services to potential consumers. In exchange for said referrals, Ms.

Hugues received less than $500.00. None of the referral payments were received through TFT.

Ms. Hugues was a consumer of TFU's online services, and this is a fortuitous connection that does not establish the minimum contacts required to exercise personal jurisdiction. *Zippo Mfg. Co.* 952 F. Supp. at 1125 (noting that "[w]hen a consumer logs onto a server in a foreign jurisdiction he is engaging in a fundamentally different type of contact than an entity that is using the Internet to sell or market products or services to residents of foreign jurisdictions). Ms. Hugues was not an employee of TFU, nor was she conducting business on behalf of TFU.

With respect to TFT, there is no evidence that Ms. Hugues had any contact with Michigan through said website. She has not done any business through the website since September of 2019, and the website expired in March of 2020 and is no longer active. **Exhibit A,** Declaration, ¶10.

## II. Due Process Clause

Furthermore, even if this Court finds that Ms. Hugues' serendipitous contact with Michigan through her online interactions with Plaintiffs established "minimum contacts," exercising personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. "The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant." *Helicopteros Nacionales De Columbia, S.A. v. Hall,* 466

U.S. 408, 413- 414 (1984) (quoting *Pennoyer v. Neff*, 95 U.S. 714 (1878)). Two criteria must be met in order for personal jurisdiction to be exercised over non-resident defendants: First, the defendant must have "minimum contacts" with the state in question; and second, that bringing the defendants into the state in question would not "violate traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). "The plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S. Ct. 1118 (2014).

When applying this analysis, it is evident that Plaintiffs cannot establish that Ms. Hugues does meet the requirements that would allow this Court to exercise personal jurisdiction over her, and that doing so would violate the Due Process Clause. First, the only connection Ms. Hugues has to Michigan is through Plaintiffs' serendipitous physical location there (although all of their activity was online); second, Ms. Hugues did not purposefully avail herself to this forum as, to the best of her knowledge, her only "contacts" with Michigan were virtual and were as a consumer and student of Plaintiffs through their online products; and third, there is no connection between Ms. Hugues and the two Vice Media articles referenced in the Complaint.

Plaintiffs rely on these articles in a strained but unsupportable effort to claim that Ms. Hugues was somehow targeting Michigan when, in connection with the

second article, she spoke to the Vancouver-based reporter, **Exhibit B**, for the Canadian media outlet. These allegations are specious. Ms. Hugues is not referenced, and there is no evidence she had any role in the first article. Ms. Hugues is only briefly quoted in the second article, and Plaintiffs have not and cannot provide any evidence which suggests that Vice Media has a larger, target Michigan audience.

Defendants cannot establish that Ms. Hugues meets the minimum contacts requirement in order for this Court to exercise personal jurisdiction over her because the only connection between this forum and Ms. Hugues is through the Plaintiffs. While Ms. Hugues had a domain name supporting an interactive website, operating an interactive website alone is not sufficient to establish minimum contacts. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.* 751 F.3d 796, 802 (2014). In paragraph 20 of the Complaint, Plaintiffs claim that the Defendants "derive substantial revenue from interstate or international commerce in the course of their own acts and conduct." Ms. Hugues derived little to no revenue from business transacted via her website or through her association with the Plaintiffs. **Exhibit A**, Declaration, ¶6. Her only contacts with Michigan were through Plaintiffs, and the Plaintiffs cannot be the only link between the defendant and the forum in order for personal jurisdiction to be exercised. *Walden*, 134 S. Ct. at 1125. It is the defendant's contacts within the forum state, not the plaintiff's, that are relevant. *Id.*

Furthermore, upon information and belief, Plaintiffs' business is conducted almost entirely online and the only connection the two corporate defendants appear to have to Michigan are the two residential addresses they list as their business addresses. Plaintiffs' website does not mention Michigan, while it clearly advertises TFU as a virtual, global community.

In respect to the Vice Media articles, Ms. Hugues is briefly mentioned in the follow-up article from March 11, 2020 and she is not mentioned at all in the February 5, 2020 article. Vice Media's audience is not restricted to Michigan, rather they are a digital news and media outlet with locations across the globe. Vice Media was founded in Montreal, Canada, its North American headquarters are in Brooklyn, New York, and the writer operates out of Vancouver, British Columbia, Canada. See **Exhibits B, C**. Plaintiffs have not provided any evidence that suggests Vice News has a larger, targeted audience in Michigan; therefore, such contacts between Ms. Hugues' comments to Vice Media and the alleged harm in Michigan is attenuated and completely serendipitous.

For the same reason, neither can Plaintiffs' establish all elements of the Calder effects test, which applies to Internet libel cases. *Calder v. Jones*, 465 U.S. 783 (1984). Under the Calder effects test, the burden is on the plaintiff to demonstrate the defendant, through their online conduct, acted intentionally, that the defendant's conduct was specifically directed at the forum state in question, and that the actual

harm suffered from the defendant's conduct occurred primarily in the forum state. *Id.* at 798. The Plaintiffs have not demonstrated that Ms. Hugues' interview with a Canadian news reporter working with Vice Media, an online newspaper that is generally circulated and available in numerous geographic locations, was directly targeted to the State of Michigan. Nor, upon information and belief, can Plaintiffs prove that the harm they suffered was primarily in Michigan, since their business operates almost exclusively online, and the alleged acts which Plaintiffs claim caused them harm all took place in New York. Because Plaintiffs cannot meet the Calder effects test, personal jurisdiction cannot be exercised over Ms. Hugues under this analysis.

## **CONCLUSION**

For the aforementioned reasons, Ms. Arcelia Francis Hugues respectfully requests that this Honorable Court grant her Fed. R. Civ. P. 12(b)(2) Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Arcelia Francis Hugues (w/ perm)*
By: Arcelia Francis Hugues, Defendant
*Pro Se*
7994 State Route 20
Madison, NY 13402
Telephone: (315) 404-9442
Email: archaicarcelia@zoho.com

</div>

18

Dated: September 16, 2020

## NOTICE OF LIMITED SCOPE ASSISTANCE

This document was drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). This document was prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.

Katie Warwick, 3L, University of Detroit Mercy, on the Brief

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed via email with the *Pro Se* Administrator by the *Pro Se* Clinic with the Clerk of Court, and the parties of record will be served via the Court's electronic filing system when it is posted by the Clerk. I hereby certify that on September 16, 2020, I also emailed same to Mr. Matthew Kerry at matt@kerrylawpllc.com.

*s/s Katie Warwick, 3L*
For the Pro Se Clinic

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TWIN FLAMES UNIVERSE.COM, INC.

     Plaintiff(s)

v.

                                  Case No.: 2:20-cv-11659
                                  Hon. Gershwin A. Drain

ARCELIA FRANCIS HUGUES

     Defendant(s)

## LIST OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| A | Declaration of Arcelia Hugues |
| B | Screenshot of Vice Reporter, Sarah Berman Bio from https://www.vice.com/en_ca/contributor/sarah-berman |
| C | Screenshot of Information about Vice Media Location from https://company.vice.com/about/#map |
| D | Cease and Desist letter |

# EXHIBIT A

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TWIN FLAMES UNIVERSE.COM, INC., *et al*,

     Plaintiffs,

-vs-                            Case No. 2:20-cv-11659-GAD-DRG

                                       Hon. Gershwin A. Drain
                                       Magistrate Judge David R. Grand

ARCELIA FRANCIS HUGUES, *et al*,
          Defendants.

---

## DECLARATION OF ARCELIA FRANCES HUGUES

1. I am one of the Defendants in this lawsuit.
2. I am proceeding *pro se*, and I receive service in this lawsuit by mail. I have received the assistance of the Federal Pro Se Legal Assistance Clinic in preparing this Declaration in support of my motion to dismiss based on lack of personal jurisdiction.
3. I live in Madison County, New York and have lived continuously in Madison County, New York since June 2016.
4. I have never been to Michigan, have never registered to do business in Michigan, and have never been employed by any individual or entity who, to my knowledge, does business in Michigan, other than the handful of referrals to Plaintiffs described in paragraph 6 of my declaration.  None of those referrals were, to my knowledge, residents of Michigan.
5. From time to time between 2017 and 2019, I made payments, which I understood to be payments for certain access to educational materials through Plaintiffs Twin Flames[1] and MAP. Those payments were made through PayPal to a named entity (Temple of Heaven and Earth) that was not

---

[1] Unless otherwise indicated, capitalized terms are as defined in the Motion.

Twin Flames or MAP. Nothing in the bills I received contained any physical address or indication of Twin Flames, MAP, Jeffrey or Shaelia's address(es) or physical location.

6. I never received payment of any kind from MAP. I received payments totaling less than $500 that I understood were from Twin Flames, in consideration for my referring other individuals who made purchases from Twin Flames. The referrals I made were through Plaintiffs' open forum on Facebook as part of a promotion. There was no written contract for this arrangement.

7. I learned about the possibility of receiving such payments through Plaintiffs' open forum and through online educational courses offered by Twin Flames. To my knowledge, none of the individuals I referred to Twin Fames lived or worked in Michigan. All of my referrals were made or facilitated through Plaintiffs' open forum on Facebook and not associated with any particular geographic location.

8. I was generally aware, through references or representations made by Jeffrey and/or Shaleia, that they were physically located somewhere in Michigan. However, they never disclosed their actual physical location or address. As a result, while I had a general understanding that they were operating their online businesses from some undisclosed location somewhere in Michigan, that location was never confirmed and was irrelevant to my interactions with them.

9. Except for one contact in my home state of New York, all of my contacts with Plaintiffs were online. I am aware of two live events involving Plaintiffs. One was a live seminar that was apparently held in Toronto, Canada, which I did not attend. I attended a live event held by one or more of the Plaintiffs in New York City, New York in approximately late December 2018 till early January of 2019.

10. I have not done any business through Twin Flames Transcendence since September 14, 2019. The website's domain name expired on March 15, 2020 and is no longer active.

11. To the best of my knowledge, Sarah Berman reached out to the individuals she interviewed for the first Vice Media article. I was not interviewed for the second article until after the first was published.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

<div align="right">

*/s/ Arcelia Frances Hugues*
Arcelia Frances Hughes

</div>

September 16, 2020

# EXHIBIT B

Taken from: https://www.vice.com/en_ca/contributor/sarah-berman



Watch   News   Canadian News   Tech   RE:GENERATION   Entertainment   Food   Health   Drugs   LGBTQ   + More

  



# Sarah Berman

VICE Canada Senior Editor

sarah.berman@vice.com

Sarah is a senior editor and reporter based in Vancouver covering crime, drugs, cults, politics and culture. She's currently working on a book with Penguin Canada about a secretive self-help group accused of sex trafficking.

 

# EXHIBIT C

Taken from: https://company.vice.com/about/#map

**Sitemap**

About
   Thoughts
Careers
   Job Board
Press
Partner
Privacy Policy
Terms of Use
Contact

**North America**

49 South 2nd, Brooklyn, USA 11211

**LATAM**

Colima 235 Col. Roma Norte
Delegación Cuauhtémoc, Ciudad de
México 06700

**EMEA**

New North Place, London, EC2A 4JA

**APAC**

11 Upper Circular Rd #03-01, Singapore
058409

VICE | VICE News | VICE Studios | VICE ON TV | VIRTUE | PULSE FILMS | i-D | GARAGE | REFINERY29

2019 VICE MEDIA LLC



# EXHIBIT D

Dear "TFU Victims,"

We have had enough with your bullying, with your baseless slander, cyber-violence, and cyber-stalking.  We have had enough of your lies, your defamation, your libel, your illegal, immoral, dishonest, and sickening behavior.  We've had enough of you damaging our finances and stealing our clients and driving away potential clients with lies of us being a cult.

Your accusations are baseless and complete fabrications and each and every one of you knows it.  We have done nothing but love and care for you while you worked with us and we have deep, deep record and testimony of this.  Your efforts to try and attack us have been meaningless and we have been very patient with you while you figured that out.  You clearly are not figuring that out for yourselves and so we will give you this notice to cease and desist your attacks and remove them from the internet immediately.

We are finished with your attacks and abuse and we do not accept it.  Starting immediately you will disband and end your hate campaign or we will end it for you.  We are going to sue you and if you claim bankruptcy we will find ways to collect what you owe from those related to you.  When you make money, courts can take money from your bank account and paycheck and give the money to us plus interest until we are paid in full for the damages you have inflicted; emotional, financial, and damages to our reputation.  Not just us, but to every single Ascension Coach and their business as well.  MAP (especially looking at you, Misty Lenae) and maybe even the Church of Union also have grounds to sue you as well.

Bankruptcy means it is nearly impossible for you to rent an apartment, rent a room, and even apply for a real world job.  It means no loans or credit cards, and bank accounts that charge you fees every single month to keep open.  We will also pursue you to the FULLEST extent of the law for your crimes.  We will subpoena every single social media outlet for your identities, your IP addresses, your computers and hard drives, your google accounts for every single defamatory and illegal thing. Computer professionals with warrants will follow every detail of your digital fingerprint and collect all of the evidence.  Police and detectives will be sent to each and every one of your homes to investigate you thoroughly. We will drag you in and out of court for a long, long time.  We will set a precedent in the court system to protect people all over the world from cyber bullies like you.

We will not only engage the legal system to take you to court for civil and criminal activities, (your criminal activities will land you in jail) we will hire private investigators to come after you and investigate you.  We will find every last piece of garbage you have done and hold you fully accountable for it.

To the parents associated with your hate group, we have been made fully aware of your abusive behavior and criminal stalking of your adult children.  You will leave them alone and communicate your retraction to VICE or you will find your wrongs are also reported to the press and you too are prosecuted with the full support of our entire community.

To those of you who reside outside of the US; you can and will be extradited to the United States and be prosecuted in criminal courts here for your illegal actions.  You too will be held financially responsible for the damages you have inflicted if you do not agree to the simple requests listed below.

You know we have done nothing even remotely wrong, illegal, unethical, or immoral to you, any of our students, or anyone at all.  You know we have NEVER done anything to harm you. The relationship

ended and we left you alone but you did not leave us alone.  This is called stalking and does not look good in a court of law because it is illegal and insane.  Your hate group leader, Elle Giacomini, has already spent six weeks in jail for stalking.  Her second offense on this charge alone would incur an even stiffer sentence and each of you would be her accomplices and stalkers too.  Elle recently attempted to sue her doctor for malpractice and lost her case due to "lack of evidence."  She has a proven track record of failing in these matters and is not someone you want to align with.

You have absolutely NO evidence of ANY of your insane claims, but we have ENORMOUS evidence of your illegal activities and your civil offenses and have been keeping detailed record of it all over the last year.  We also have record of all our interactions with you through recorded classes and messages where a jury would see that we have treated you with kindness, courtesy, and respect.  Hundreds and hundreds of our students will step forward and testify that not only have we treated each of them with respect, but that we have treated each of you with respect.  Our system functions with exacting efficiency and whatever support we call in from our students they will gladly stand up not just for us, but for themselves against your hatred.

We will subpoena you ALL to courts in Michigan, where you don't live, and you will have to pay travel expenses, hotels, food, court fees, lawyer fees in addition to the money we will sue you for.  In the end this will cost us nothing because you will reimburse us for our lawyers and our private investigators and the damages you caused.  Since your slanderous article appeared in VICE, we estimate damages in the *millions* of dollars that you will be jointly liable for.  If you do not show up to court, you automatically lose and you will pay in full whatever we are suing you for.  In criminal courts if you do not show up there will be an immediate warrant for your arrest and you will be thrown in jail.  We promise you, we will outlast you in a court battle and our community will step up and support us for every single penny we needed to bring you to justice.  We are ACHING to bring you to justice for your crimes.

So far it hasn't really been worth it for us to take you to court, but due to your recent escalations our patience has completely worn out.  This ends now, or you will find each and every single person who does not take us up on our offer and who even slightly co-conspired in this game you have been playing receives a summons to a Michigan court where you will find a Michigan jury VERY sympathetic to the hard working entrepreneurs who built a profitable business from the ground up, and VERY unsympathetic to the people who are committing senseless hate crimes against us.

It is not just us who has grounds to sue you but others in our community who have grounds to sue you because they have lost clients and reputation and this is their livelihood as well.  You will find yourselves tied up in a legal battle for a very long time and you will be paying for a long, long time.  We will fully stand behind those who will sue you.

This court battle will be very positive PR for us.  People will sympathize with us because people love to see bullies get put in their place.  You know you have been bullying us all this time, even if you justified it among yourselves that we "deserved this."  The facts will incriminate you left, right and center, and liberate us.  We hope you have not taken our silence on all this as admission to your insane attacks.  We have simply been mature and patient with your vast immaturity and potential serious mental health issues.  This is because we are kind and generous people, not because we accept your bullying.

Your hate group providing our home address on the internet, inciting an angry mob, and suggesting people harass us with the police to our house is a serious crime.  You think you're safe on the internet to

continue to attack us, but you are not safe to be criminals anywhere on this planet.  The legal system will protect us and our businesses and it will bring you to justice.

This is your FINAL WARNING and your only chance to get your get out of jail free card.  Anyone who takes us up on this offer we will not take you to court and will not involve you in this in any way, you get out of this "scott-free" so long as you do not EVER in ANY WAY return to your previous predatory behaviors.  We will be watching to ensure this is completed and we will be waiting with baited breath for you to step one single sliver of a toe back into your old slanderous behaviors for you to violate this agreement and for us to proceed to court.  We will retain all our evidence on file in the event you decide to change your mind and prefer to pay us heavy recompense for the damages you have inflicted, and pay society by spending time in jail for the crimes you have committed.

This is a one time offer to each and every one of you.  We know who you are even if you did not directly receive this email from us.  If you care about the livelihoods and well being of those you have been conspiring with, as well as your own affiliation with them, you will be sure they get this email too and they too respond, otherwise our deep and thorough investigation will find every single one of them too.  What we are offering you right now is what people call a deal of a lifetime.


Here is what you are to do if you do not want to have to pay for the damages and crimes you have thus far committed and get off "scott-free."  This agreement is legally binding.

1.  **(Write a retraction)** You will write a complete and effective collective retraction to your support for the VICE article and apologize for the lies you told about us.  You will post it on the reddit/cult forum and send us an email with the link.  You will send it to Sarah Berman at VICE asking her to publish it on your behalf and to retract her article because your allegations were not true and done in hatred.  If you do this, you will find we have no need to publish a VERY revealing and VERY uncomfortable (for you) article in response.  It will include facts which easily and completely refute all of your sick allegations to defame us and paint us as a cult, and show how your agenda has been to abuse and scam us and make money for yourselves.  We'll also share juicy details of your "TFU Victim's Fund" on Gofundme, e-begging for $200,000.  This will just be the beginning of our response to your hate group's attacks if you do not stand down.

2.  **(Delete your attacks)** You will delete any and all slanderous, defamatory, or negative comments, reviews, videos, chat conversations, posts, groups, reddit threads, accounts, or any other of this type of communication anywhere on the internet that you have made against TFU or any of its affiliates.  You will send us an email communication stating you have done this.

3. **(Move on)** You will immediately disband by leaving groups, chats, conversations, and no longer holding meetings with your hate group.  You agree to never bother, harass, or interact with us, our community, our companies, our church, our affiliates, our clients and potential clients anywhere on the internet, in person, directly or indirectly ever again.  You will move on and go away from us forever and leave our online groups and never return.

4. **(State you agree)** You will respond to this email within 48 hours from the time it was sent with "I (state your full, legal name first/middle/last) understand and agree."

If you do this, we will agree not to pursue a legal campaign of any kind against you.  If we do not hear

from you within the given time frame we will assume that you have decided to be taken to court and have the law force you to stop, and that you will pay for all damages you have caused.

Your time of attacking us is over.  It can either end now and you can walk away without negative consequences, or it will end following what will prove to be for you an absolutely brutal court case. We have something real to protect, something that matters to a lot of people and genuinely helps people.  We will protect it with everything we have and everything we are.  There are a lot of us and we are growing every day.  What we have means something to people. You have a small group of haters who have gained nothing through your efforts, who stand for nothing, and who don't actually even care about what you say you stand for.  What you have does not mean anything to people.

There are far better battles in life for you to fight and better things for you to do with your lives than build a meaningless hate group.

We look forward to your immediate response.

Sincerely,

Jeff, Shaleia, and the Twin Flames Universe Community.