MATTHEW KERRY (P81793)
Attorney for Plaintiffs
214 S. Main Street, Suite 200
Ann Arbor, Michigan 48104
(734) 263-1193
matt@kerrylawpllc.com

DAVID D. LIN (*pro hac vice* forthcoming)
JUSTIN MERCER (*pro hac vice* forthcoming)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
Email: david@iLawco.com
Email: justin@iLawco.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TWIN FLAMES UNIVERSE.COM INC., a Michigan corporation; MIND ALIGNMENT PROCESS INC., a Michigan corporation; JEFFREY AYAN, an individual resident of Michigan; and SHALEIA AYAN, an individual resident of Michigan,<br><br>Plaintiffs,<br><br>vs.<br><br>LISA ELLE GIACOMINI, et al.,<br><br>Defendants. | Case No.: 2:20-cv-11659-GAD-DRG |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT ARCELIA HUGUES'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs TWIN FLAMES UNIVERSE.COM INC. ("TFU" or "Twin Flames Universe"); JEFFREY AYAN, ("Mr. Ayan"); and SHALEIA AYAN, ("Ms. Ayan" and collectively with TFU and Mr. Ayan, "Plaintiffs"), by and through its counsel, respectfully submit this memorandum of law in response to Defendant Arcelia Hugues' ("Hugues'" or "Defendant's") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

The gravamen of why this Motion should be denied is simple: Hugues operates at least one of two interactive websites where she sells her services, possibly to Michigan residents, in competition with the Michigan-based Plaintiffs to this date, *while* she made false and misleading statements published on Vice.com about Plaintiffs' services in promotion of those same services, *after* she unilaterally engaged with Plaintiffs in Michigan over a period of almost three years. Why she now believes her commercially competitive conduct in and/or directed to the state of Michigan does not subject her to the laws of Michigan is a mystery.

First, with regard to Defendant's motions to dismiss under Fed. R. Civ. P. 12(b)(2), Defendant has engaged in numerous, unilateral activities purposefully directed toward Michigan and that give rise to Plaintiffs' claims which in sum, subject Defendant to personal jurisdiction here. Hugues repeatedly reached into Michigan on her own to purchase digital educational content and attend live classes from the Plaintiffs. The content of these Michigan-based classes is at the heart of this case, insofar as she manipulated Plaintiffs online presence in at least different two ways (hijacking Plaintiffs' social media accounts and disparaging Plaintiffs' in a Vice.com article which mentioned Plaintiffs' residence in Michigan). Hugues then acquired the educational content located in Michigan, accepted Plaintiffs' contracts, extracted TFU's copyrighted material and trade secrets, incorporated TFU's copyrighted material and trade secrets into her own websites and store

2

fronts, and targeted all four Plaintiffs, their existing students and partners, as well as potential clients, with negative advertisements meant to promote her competing services. To this date, Hugues engages in direct service (likely to Michigan residents) of content that incorporates Plaintiffs' materials and trade secrets via her website, Facebook and Twitter. These are not "random, fortuitous, attenuated, and unintentional" contacts, rather they are intentional, calculated, and targeted.

Thus, here the exercise of specific personal jurisdiction is reasonable given the tortious conduct alleged to have taken place and/or felt here in Michigan. Michigan is where Defendant Hugues was aware that Plaintiffs reside and principal place of business is located in Michigan, that other of Plaintiffs customers and students reside in Michigan, such that she could reasonably expect to be haled here. On the whole, Defendant's Motion ignores the plain allegations of the Complaint and demonstrates a fundamental misrepresentation of the facts regarding specific personal jurisdiction because she utterly ignores that her wrongful and tortious conduct (not just defamatory and misleading) was directed to and targeted third parties in the Michigan forum. As such, Defendant's motion should be denied.

In the alternative, given Defendant still operates three interactive Internet storefronts where she offers her competing services for sale to customers across the world, should the Court determine that Defendant's prior known contacts are insufficient, Plaintiffs should be given an opportunity to conduct jurisdictional discovery to determine the scope of Defendant's business in the state of Michigan.

## FACTUAL BACKGROUND

Plaintiffs respectfully refer the Court to the Complaint (ECF Doc. No. 1) for a full and accurate statement as to what was alleged in support of in support of jurisdiction. Plaintiffs also

refer the Court to the Declaration of Jeffrey Ayan dated November 12, 2020 ("Ayan Decl.") for additional background facts. Certain relevant facts are reiterated hereinbelow:

Defendant Arcelia Hugues joined Plaintiff TFU's TFAS on November 16, 2017. *See* Ayan Decl. at ¶¶ 10-22. Plaintiffs personally welcomed Hugues to Twin Flame Ascension School in a live online session, as well as via a post in TFU's Facebook Open Forum (the "Open Forum"). *See* Ayan Decl. at ¶¶ 10-22, Exhibit A. Throughout Hugues' paid membership with TFU, she had been actively posting on and creating her own forum topics on TFU's Open Forum from 2017 through at least August 2019. *See id*. Plaintiffs would also post in the Open Forum (communicating with Hugues as well), and they often spoke about living in Michigan, as well as the fact that several TFU members resided in Michigan. *See id*. Plaintiffs' Michigan connection and the fact that TFU conducted business in Michigan was no mystery to anyone involved with TFU or MAP—much less someone who was as active as Hugues was in the Open Forum. *See id*. at Exhibit B.

Hugues was also keenly aware of Plaintiffs business being in Michigan, not only because it was common knowledge for any other devoted students of TFAS just like Hugues, but also the fact that Plaintiffs spoke openly about living in Michigan with Hugues *in person*. *See* Ayan Decl. at ¶¶ 10-22. For example, in January 2019, Plaintiffs flew to New York City to meet some of Plaintiffs' TFU students. Prior to the event, they discussed about traveling from Michigan to New York. *See id*. Hugues posted in the Open Forum and discussed Plaintiffs' travel plans to the event, and then she proceeded to personally attend the event. *See id*. at Exhibit C.

Hugues was not only a TFU member and event attendee, she also subscribed to the Ascension Coach Training Program and became an Active Certified Ascension Coach affiliated with TFU. She openly admits that on her websites including <twinflametranscendence.com>

("Hugues' First Website") and <twinflametranscendence.wordpress.com> ("Hugues' Second Website"). On her First Website, she states:

> "You can get involved with Jeff and Shaleia at ©twinflamesuniverse.com or on the Twin Flames Ascension School open forum on Facebook, I shall provide links below. I implore you to investigate their work as it has completely changed my life for eternity and nothing else could possibly compare to their work (that is not an exaggeration). . . . You can see me and my classmates [on a YouTube link] diligently working with our teachers in Twin Flame Ascension School.
>
> **Let Me Help You**
> \*   \*   \*
> I am a certified Live Student of Jeff and Shaleia and look forward to *offering you the best Twin Flame coaching* you can get! See you soon!"

*See* Ayan Decl. at Exhibit D.

Therefore, when Hugues received her referral bonuses from TFU, she was aware of the fact that she was transacting business with a Michigan business. *See* Ayan Decl. at ¶¶ 18-22. Similarly, when Hugues continuously posted in the Open Forum throughout the years, she was associating with the individual Plaintiffs and the corporate Plaintiffs TFU and MAP in Michigan. *See id*.

Defendant Hugues likely reached into Michigan again to do business in competition with Plaintiffs by setting up *two* interactive websites <TwinFlameTranscendence.com> and <TwinFlameTranscendence.Wordpress.com>, registering a companion Twitter account @TFTranscendenc3, and registering a companion, interactive storefront on Facebook called "Twin Flame Transcendence"—each of which resembles the name Plaintiffs do business under. Since Plaintiffs' school has, to a certain degree, developed fame and influence in the Twin Flame spiritual coaching market, people who actively search for our teachings would not come across

5

Hugues' website and Twitter account randomly. *See* Ayan Decl. at ¶¶ 20-22. Instead, they would likely be interested in or active learners of Plaintiffs' programming. *See id.*

In the same vein, when someone came across Hugues' website and her Twitter account after the time of her disparaging and misleading statements, they inevitably associated her postings, teaching and *services,* (i.e., coaching) which she promotes on her own behalf, with Plaintiffs' business based in Michigan. *See* Ayan Decl. at ¶¶ 21-26.

Thus, while Hugues started out as a TFU customer, TFU member, ally and affiliate of Michigan-based TFU, effectively using TFU's platform to launch her own business, "TWIN FLAME TRANSCENDENCE," she then manipulated Plaintiffs' educational content and platform to promote herself—including, as described below, in the Vice articles. While Plaintiffs do not know if Hugues still has customers of her own in Michigan, she may, and she was certainly aware of the connection of Plaintiffs' Michigan-based business when she started competing with them directly. Plaintiffs also allege, in preparation for a collaborative effort to disparage Plaintiffs' business, Hugues and defendants such as Lisa Giacomini and Adam Katsale exchanged messages on social media and offline to coordinate their campaign to disparage Plaintiffs and influence Vice to author an article which mentions (a) Plaintiffs' Michigan residence and (b) that "Hugues started her own spiritual coaching practice which earned her between $300 and $600 a month, did free Tarot readings, and made videos for Twin Flames." *See* Ayan Decl. at Exhibit E, the Vice Articles referenced in the Complaint. Plaintiffs also believe that Hugues and defendants are connected with the Reddit account "twinflametruth," which stated in a public post notes that the individual Plaintiffs live in "Farmington Hills," Michigan. *See* Ayan Decl. at Exhibit F.

Finally, besides operating and residing in Michigan, Plaintiffs have several customers who are Michigan residents who have claimed to have read the Vice Articles and/or online posts from

Hugues and have emailed, called and/or messaged to inquire about the truth of the false statements therein. *See* Ayan Decl. at ¶¶ 24-28.

**ARGUMENT**

I. **HUGUES IS SUBJECT TO SPECIFIC JURISDICTION BASED ON HER MICHIGAN ACTS AND BECAUSE PLAINTIFFS' CLAIMS ARISE DIRECTLY FROM HER CONTACTS WITH THIS FORUM.**

The Court has specific personal jurisdiction over Defendant Hugues here and dismissal under Fed. Rule Civ. P. 12(b)(2) would be improper.

    a. **Legal Standard Governing Fed. R. Civ. P. 12(b)(2) Motions**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), a plaintiff "need only make a prima facie showing of jurisdiction" and is entitled to have its allegations taken as true and all disputed facts construed in its favor. *See Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002). In the absence of an evidentiary hearing or in the event of a motion improperly supported (i.e. without affidavits from the defendant), a "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff . . . and will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2). *Id.* (internal citations omitted). In this posture, "a court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal . . . to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe* at 1262. As set forth below, Plaintiffs have met the legal standard here.

    b. **Specific Personal Jurisdiction Over Hugues Is Proper Because Her Conduct Satisfies at least Two Sections of the Michigan Long Arm Statute**

In her Motion to Dismiss, Hugues admits that she had an awareness that Plaintiffs were in Michigan—given her years of knowledge of Plaintiffs and their location. However, here, Plaintiffs

7

allege that such knowing and targeted conduct caused injury to Plaintiffs in Michigan, and reached not only Plaintiffs' customers in Michigan, but also likely Hugues' *own customers* in Michigan. In turn, Hugues also argues that her connection to Michigan was "fleeting and serendipitous" by downplaying her knowledge of Plaintiffs' business location and diverting the Court's attention from the patently false and salacious statements she made to the famous VICE magazine to her being a mere online "consumer" to a Michigan business, which is not at issue here. However, as alleged in the complaint, she did (and continues to do) much more than that.

Based on these faulty premises and misleading facts, Hugues argues for dismissal on jurisdictional grounds on the similarly faulty basis that, because she resides in New York and her interaction with Plaintiffs had been mostly online, she should not be haled into Michigan based on her Michigan-focused conduct. As stated below, Defendant Hugues is wrong for several reasons.

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Hinson v. Yates*, 2018 WL 3621043, at *5 (W.D. Mich. July 9, 2018). With respect to Plaintiffs' claims, M.C.L. § 600.705(1) permits exercise of jurisdiction upon "[t]he transaction of any business within the state," and M.C.L. § 600.705(2) "specifically permits the assertion of jurisdiction where 'consequences' have been caused in this state." *See Neogen Corp.*, 282 F.3d at 888 (6th Cir. 2002) ("the `slightest act of business in Michigan' is a sufficient business transaction for purposes of the statute."); *see also Cole v. Doe*, 77 Mich. App. 138, 142, 258 N.W.2d 165 (1977) (regarding M.C.L. § 600.705(2)); *Umlaut, Inc. v. P3 USA, Inc.*, 2020 WL 4016098, at *4 (E.D. Mich. July 15, 2020) ("Michigan's long-arm statutes extend limited jurisdiction over a non-resident individual or corporation if the action arises out of various 'relationships' with Michigan. One such relationship includes 'the doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort.'").

As the Michigan long arm statute permits the exercise of personal jurisdiction to the fullest limits permitted under the Constitution, this two-step inquiry collapses into one. *See Hinson*, 2018 WL 3621043, at *6. Accordingly, courts in this District must determine whether a defendant has made sufficient "minimum contacts" with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Additionally, the exercise of jurisdiction must otherwise comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

As set forth in the Complaint, first, Ms. Hugues unilaterally created contacts in Michigan, not only by contracting with Plaintiffs' business as a consumer and later getting paid as a referrer, but also by communicating (a) with Plaintiffs directly via live video chat, email and forum posts, (b) communicating with other of Plaintiffs' users who reside in Michigan in similar fashions, and (c) by participating in and promoting her services within a community forum comprised of participants interested in the Michigan-based Plaintiffs' programs. *See* Ayan Decl. at ¶¶ 10-22. In her motion, Hugues admits that she transacted some business with Plaintiffs in Michigan. These transactions alone are sufficient to establish limited jurisdiction under M.C.L. § 600.705(1). Even if Plaintiffs are not specifically suing or seeking relief with regard to the underlying bases of these transactions, i.e. Hugues participation in live classes, or extraction of educational materials, or her referral payments from Plaintiffs, Plaintiffs *are* seeking relief for Hugues' tortious conduct which arose from those transactions.

For instance, as a stepping stone to later disseminate false information about the Plaintiffs and to use Plaintiff's proprietary material to benefit herself, Defendant Hugues likely reached into Michigan again to do business in competition with Plaintiffs by setting up *two* interactive websites <TwinFlameTranscendence.com> and <TwinFlameTranscendence.Wordpress.com>, registering

a companion Twitter account @TFTranscendenc3, and registering a companion, interactive storefront on Facebook called "Twin Flame Transcendence"—each of which resembles the name Plaintiffs do business under.  Hugues also took advantage of her position within Plaintiffs' existing influence in their community of followers and customers by using these similarly-named platforms to target Plaintiffs' current and prospective customers to promote her own business, as well as to steer them away from Plaintiffs by issuing misleading statements about the Plaintiffs. <TwinFlameTranscendence.Wordpress.com>, the Twitter account and Facebook storefront are active to this date. Thus, while Hugues' claim that only one of her two websites is "no longer active" as of March 2020 is already of no moment if it was active when the offending conduct occurred, her omission of these other online sales outlets make her claims of the absence of interactivity online and "de minimis" sales not credible.

Next, Plaintiffs also allege that Defendant Hugues banded together with other defendants to again to amplify their negativity by making false statements to a reporter for Vice Media on two occasions in February and March of 2020. As a part of the scheme and conspiracy, in which Defendant Hugues participated, Hugues helped convince the Vice Media reporter to publish two fantastical and false accounts online of her and other defendants' "experiences" with Plaintiffs in Michigan—which painted an impressionist caricature of Twin Flames Universe's actual business in Michigan and was otherwise filled with outright misleading statements and lies.

In other words, Defendant Hugues went rogue and took advantage of an opportunity to amplify her false and misleading statements as to Plaintiffs on a widely-disseminated Vice.com piece. Specifically, the genesis of Hugues' false statements therein were her false accounts of experiences she previously had with Plaintiffs *in Michigan*. For instance, in the Vice article, it states "in live classes and online forums, Hugues <u>said she witnessed</u> . . . ." There is no dispute that

these "live classes" were broadcast from Michigan by Plaintiffs, or that these "online forums" were about and organized by Plaintiffs from Michigan. She further falsely alleged that Plaintiffs engage in "Twin Flames' gender conversion coaching." Besides Plaintiffs' denial that any such thing occurred, the only way Hugues could have alleged these materially misleading and (false) facts about Plaintiffs is if she first engaged with Plaintiffs *in Michigan*—which she admits she did. Similarly, in the Vice article, and as alleged in the Complaint, Hugues does not deny she spent "hundreds of dollars a month on courses"—that Plaintiffs alleged she later misrepresented the nature thereof. Those "courses" were Plaintiffs' Michigan-based programs. Hugues promoted this Vice piece on her competing social media pages.

Again, Plaintiffs alleged that defendant Hugues conspired with other disgruntled former students of Plaintiffs TFU and MAP, which are based in Michigan, to hijack TFU's Facebook and other social media accounts in order to post false information about the Plaintiffs. Hugues also directly supported and helped other defendants in this Action generate online video content that denigrates the Michigan-based Plaintiffs. Thus, as Plaintiffs' computers and resources are located in Michigan, Hugues' connection and conspiracy with other defendants to literally take over Plaintiffs' social media accounts may very well be conduct that occurred *in Michigan*, not simply felt here.

The combination of these activities warrant an exercise of limited personal jurisdiction for each of Plaintiffs' claims under both M.C.L. §§ 600.705(1) and (2). "Section two of the long-arm statute has been interpreted broadly, such that 'any nexus between [business] transaction and tort shall allow limited personal jurisdiction to operate.'" *Lyngaas v. Curaden AG*, 0, 2018 WL 1251754 at *4 (E.D. Mich. March 12, 2018), (*quoting Brabeau v. SMB Corp.,* 789 F. Supp. 873, 876 (E.D. Mich. 1992)); *see also Hinson*, 2018 WL 3621043, at *5-*6. In view of these facts,

11

Hugues "should reasonably anticipate being haled into court" in Michigan. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### c. Plaintiffs' Causes of Action Arise Directly from Defendants' Contacts with Michigan.

This second prong is satisfied because Plaintiffs' causes of action are proximately caused by Hugues' actions in Michigan or which were felt in Michigan. *Beydoun*, 768 F.3d at 507- 508 (citing *Burger King Corp.*, 471 U.S. at 474). Hugues' acquisition of the TFU educational content in Michigan gives rise to and is directly related to Plaintiffs' claims for unfair competition because Hugues obtained access to these assets only by her association with Plaintiffs in Michigan. Hugues' ability to spread misinformation about the Plaintiffs on these platforms gives rise to and is directly related to Plaintiffs' claims for defamation, tortious interference with contractual relations and prospective contractual relations.

At a minimum, Plaintiffs claims arise from Hugues' unfair competition and false promotion to support her business. First, she used the Vice articles to create a negative ad campaign about Plaintiffs in an effort to promote "her own spiritual coaching practice," as referenced in the March Vice article. *See* Ayan Decl. at Exhibit E. Whether Hugues did and does business in Michigan is an open (yet resolvable) question. Hugues' Second Website, <twinflametranscendence.wordpress.com>, and her Facebook storefront are still active, still refer to Plaintiffs by name and links to Plaintiffs' websites, still permits sales to occur and the scheduling oof sessions—even as of today, November 20, 2020— and still mentions Hugues' request for referrals *to Plaintiffs*' business. While there is a degree of back-and-forth with Hugues public positions disparaging Plaintiffs (on Reddit, her Facebook page and the Vice articles) and positively promoting Plaintiffs (on Hugues' Second Website), there is no dispute that Plaintiffs' claims arise from these Michigan directed contacts.

### d. Defendants' Activities in Michigan are Substantial Enough to Make the Exercise of Jurisdiction Reasonable.

"[W]hen the first two elements [of the jurisdictional analysis] are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Third Nat. Bank*, 882 F.2d at 1092. "A court must consider several factors in this context, including [1] the burden on the defendant, [2] the interest of the forum state, [3] the plaintiff's interest in obtaining relief, and [4] the interest of other states in securing the most efficient resolution of controversies." *CompuServe*, 89 F.3d at 1268.

Hugues did not sufficiently address this prong. The analysis of reasonableness is not limited to the defendant's burden to come to the forum, but must also include insight into factors 2 through 4, all of which weigh in Plaintiffs' favor and support the exercise of jurisdiction in Michigan. First, "Michigan clearly has an interest in protecting a company whose principal place of business is located in Michigan" from acts committed by defendants located in other states. *See Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 555 (6th Cir. 2007). "The fact that defendants engaged in their alleged tortious conduct while they sat behind their computer screens in [New York] does not detract from Michigan's interest in protecting plaintiff[s] and [their] business" *See Hinson*, 2018 WL 3621043, at *6. In addition, Plaintiffs have a strong interest in defending their rights in Michigan by four different defendants located in New York, Colorado, California and/or England. *See Hinson*, 2018 WL 3621043, at *6 ("Plaintiff has alleged that defendants knowingly and repeatedly inserted themselves in plaintiff's personal and business affairs over a period of months in apparent attempts to discredit plaintiff and interfere with plaintiff's business operation in Michigan. Plaintiff should not be required to file three lawsuits in three different states to seek relief for claims arising from actions directed against him, his business, and his local customers, all of whom are located in Michigan.").

13

As a result of these factors, along with the contacts with Michigan outlined above, this Court's exercise of jurisdiction over Defendant Hugues is reasonable.

### e. Plaintiffs Have Also Satisfied the *Calder* Effects Test

Specific jurisdiction where an intentional tort is alleged may also be guided by *Calder v. Jones*, 465 U.S. 783 (1984)). "The effects test only allows a court to exert personal jurisdiction over a defendant if he: (i) commits intentionally tortious actions; (ii) which are expressly aimed at the forum state; (iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered." *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F. Supp. 2d 693, 700 (E.D. Mich. 2009) (citing *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 835 (N.D.Ill.2000).

Hugues argues that Plaintiff cannot establish all the elements under the *Calder* effects test by, again, focusing exclusively on the mere "online existence" of Hugues' actions, whether it be a website that publishes false information and steals Plaintiffs' proprietary content, or an online article that painted the Plaintiffs in complete falsehood.

In *Calder*, the Supreme Court focused that whether defendants' intentional actions were aimed at the forum state; whether the defendants knew the stories "would have a potentially devastating impact" on the plaintiff; and whether they knew the "brunt of the harm" would be suffered in California. *Calder,* 465 U.S. at 789. In *Calder*, the plaintiff filed suit in California against an author and editor for an allegedly defamatory article published in the National Enquirer. As the article's author and editor were Florida residents, the author did most of his research in Florida, and the editor reviewed and edited drafts in Florida, each defendant moved to dismiss for lack of personal jurisdiction. *See id.* at 785-86. But even though neither defendant set foot in California in connection with the story, the Supreme Court found exercise of jurisdiction was

14

proper, as defendants were fully aware that the effects of the article and the brunt of injury would be felt primarily in California where Plaintiff lived. *See id.* at 788-90; *See also Park W. Galleries, Inc. v. Hochman,* 2009 WL 728535, at *4 (E.D. Mich. Mar. 19, 2009) ("In publishing articles critical of a Michigan corporation for a worldwide audience, the Court finds that FAR was "doing or causing an[ ] act to be done, or consequences to occur in [Michigan], resulting in an action for tort" (as has Plaintiff has filed here)". . . .and noting that "publishing the articles on the internet (which can be viewed by residents of any state, including Michigan) [could] constitute conduct occurring in Michigan. . . .").

Similarly, in *Hinson v. Yates*, the plaintiff accused three out-of-state defendants of torts sounding defamation and tortious interference, arising out of their false statements on (a) the defendants' own Facebook accounts, (b) Plaintiff's Facebook page and/or (c) private Facebook groups. *See Hinson*, 2018 WL 3621043, at *5-*6. Noting defendants made, *inter alia*, "a number of tortious statements on plaintiff's Facebook business page which had adverse consequences for plaintiff's business located in Michigan," the Hinson court held that each of the defendants was "subject to limited personal jurisdiction pursuant to M.C.L. § 600.705(2)." *Id.*

Here, similarly, Plaintiffs alleged that Defendant Hugues was keenly aware of their presence in Michigan. It is common knowledge for all TFU students as plaintiffs have been speaking openly about living in Michigan from November 2017 to August 2019, and Hugues had been a TFU student since November 2017. Further, Hugues met plaintiffs and other TFU students in person and discussed their presence in Michigan at a New York City meetup in January 2019. Hugues also admits her "general understanding" of Plaintiffs' business presence in Michigan, though unsure of the exact address. Motion at 7.

15

Additionally, Plaintiffs allege, and Defendant Hugues does not dispute that she and other Defendants conspired to spread misinformation about Plaintiffs or offering direct support to and participated in other defendants' schemes to, among others, hijack and destroy Plaintiffs' business to promote their own. Therefore, by the time Defendant Hugues spoke to the Vice Media reporter in anticipation of her being published in the March 11th Vice Article, and conspired with other Defendants in their denigrating campaign against the Plaintiffs, she was more than aware of their Michigan presence—such that the effect of her conduct would be felt here.

Just as in *Hinson*, Hugues' unwavering support for other Defendants' campaign of denigration on Facebook as well as on her own social media accounts, orally to a Vice Media reporter, and within the Vice Articles themselves, "which had adverse consequences for plaintiff's business located in Michigan," should "subject [Hugues] to limited personal jurisdiction pursuant to M.C.L. § 600.705(2)." *See Hinson*, 2018 WL 3621043, at *5-*6.

### f. Personal Jurisdiction Over Defendant Hugues Also Comports with Due Process

In analyzing whether specific jurisdiction comports with dur process, the court must "examine the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Due process is satisfied when specific jurisdiction exists and, in those cases, where a defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472. Even a single contact which creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant. *Id.* at 475, n.18; *Hinson*, 2018 WL 3621043, at *6.

In Sixth Circuit, three criteria must be met for a court to exercise personal jurisdiction over a non-resident defendant:

16

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Big Guy's Pinball, LLC v. Lipham*, 2015 WL 4209042, at *2 (E.D. Mich. July 10, 2015) (quoting *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004)).

The Sixth Circuit has found that "[p]urposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Beydoun v. Wataniya Rests. Holding*, 786 F.3d 499, 505-06 (6th Cir. 2014). "The purposeful availment requirement ensures that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Umlaut* at *5 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "To satisfy this requirement, physical presence in the forum state is not required; instead, 'if the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate.'" *Umlaut* at *5 (citing *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D. Mich. 1996)). Furthermore, "[e]ven a single act by [the] defendant directed toward [the forum] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001).

Asserting jurisdiction over Defendant Hugues would not offend due process because she has more than minimum contacts with the state based on her conduct. While Defendant Hugues argues that her "passive" or "fortuitous" connection to TFU's online services and her "nominal"

referrals bonuses made for virtual coaching sessions are not the type of interactive websites that would normally subject her to jurisdiction by her statements thereon, Vice Media's website for certain is. It is commercial in nature, and Vice Media "engages in global marketing of its services, including to residents of Michigan." *See Hochman*, 2009 WL 728535, at *5.

*In Park W. Galleries, Inc. v. Hochman*, one of the defendants, an Arizona LLC, operated a news-type website about art that published an interview with another non-resident defendant (Hochman) that allegedly defamed the plaintiff (a Michigan corporation) and was conducted for the purpose of being published on that website. *Id.* There, the court found that because of the global marketing of its website, the Arizona LLC and Hochman (the interviewee), "purposefully availed itself of the privilege of acting in Michigan and/or causing consequences in Michigan as it relates to that interview [with Hochman]." *Id.* Similarly, here, Defendant Hugues, whether she reached out to Vice Media or she was engaged by the Vice Media precisely because of her alleged knowledge of Plaintiffs and their business practices, participated in an "interview" for the purpose of being published on the interactive Vice Media website.

Likewise, Hugues admits she has referred customers to Plaintiffs and likely has her own, thought provides no details about their whereabouts or location. Plaintiffs knows at least some of its customers are in Michigan, but only Hugues would know which ones she referred to Plaintiffs or which of her own customers reside in Michigan. In any event, her interactive Second Website is not only directed to customers across the world, but mentions and refers extensively to Plaintiffs—highlighting the reasonableness of a judicial inquiry to Hugues' deliberate misleading of consumers about a Michigan-based business. As such, Defendant Hugues purposely availed herself of the privilege of causing consequences in Michigan.

In short, an exercise of jurisdiction would comport with due process.

**II.     PLAINTIFFS SHOULD BE ENTITLED TO JURISDICTIONAL DISCOVERY SHOULD THE COURT DECLINE TO FIND SPECIFIC PERSONAL JURISDICTION AT THIS TIME**

Should the Court decline to find specific personal jurisdiction at this juncture – which it should not – jurisdictional discovery – not dismissal – is the appropriate remedy.  Given Plaintiffs allege specific instances of Defendant Hugues' conduct that could have taken place in Michigan (like the hijacking of Plaintiffs' social media accounts), and demonstrated the likely existence of Hugues' customers in Michigan, jurisdictional discovery, rather than dismissal, is appropriate.

**III.    CONTINGENT REQUEST FOR LEAVE TO AMEND**

To the extent the Court disagrees with the positions set forth by Plaintiffs herein and determines that there are any deficiencies in the Complaint, Plaintiffs respectfully request that they be granted leave to amend its pleadings, after jurisdictional discovery, to address any such deficiency.

**CONCLUSION**

In light of the foregoing the Court should deny Defendant Hugues' motion in its entirety.

DATED this 20th day of November, 2020.          Respectfully submitted,

*/s/ Matthew Kerry*
Matthew Kerry (P81793)
Attorney for Plaintiffs
214 S. Main Street, Suite 200
Ann Arbor, Michigan 48104
(734) 263-1193
matt@kerrylawpllc.com

LEWIS & LIN LLC

David D. Lin (pro hac vice forthcoming)
Justin Mercer (pro hac vice forthcoming)

*Attorneys for Plaintiffs*

19